**STROUDSBURG AREA SCHOOL DISTRICT, Petitioner,**

v.

**JARED M., a Student in the Stroudsburg Area School District and Kerry M., as parent and Natural Guardian of Jared M., Respondents.**

Commonwealth Court of Pennsylvania.

Argued April 14, 1998.

Decided May 22, 1998.

Daniel M. Corveleyn, Stroudsburg, for petitioner.

Herbert D. Hinkle, Lawrenceville, NJ, for respondents.

Before PELLEGRINI and LEADBETTER, JJ., and JIULIANTE, Senior Judge.

JIULIANTE, Senior Judge.

The Stroudsburg Area School District (District) petitions for review of a decision of the Department of Education's Special Education Appeals Panel reversing a hearing officer's recommended decision and ordering

the District to provide one year of compensatory education for Jared M., and to reimburse his mother, Kerry M., for the tuition she paid to send Jared to an out-of-state residential educational facility. We affirm the Appeal Panel's decision.

The District identified Jared, in June of 1993 at the end of his fourth-grade year, as being eligible for special educational services, based on an Other Health Impairment.[1] It was recommended that he receive modifications in the regular classroom by the regular classroom teacher, with accommodations including assistance with organizational tasks and permission to take tests orally, and that he receive remedial math instruction. The District developed Individual Educational Programs (IEPs)[2] for Jared for fifth, sixth and seventh grades.

In September 1995, at the start of Jared's seventh-grade school year, his father became seriously ill and died a month later. The death had a serious emotional impact on Jared, his mother and sister. Jared exhibited withdrawn behavior, did not have his mind on his work, failed to submit classwork and homework, increasingly slept in class, had excessive absences, and experienced increased behavioral problems at home. In February 1996, Jared was admitted to the Hershey Medical Center's child psychiatry inpatient unit for psychological and psychiatric evaluations, and he received five weeks of instruction from a local intermediate unit. When Jared returned to school in March of 1996,[3] Hershey's educational recommendation was that he should return to his present educational programming with the learning support of a self-contained mathematics class and learning support in his other mainstreamed classes. (R.R. at 95a.) A behavior management program was recommended,

with a point system to be used consistently in school and at home.

In May of 1996, Jared's mother removed him from school because of assaultive and aggressive behavior at home. A relative taught Jared at home for the remainder of the 1995–96 school year, and then Kerry enrolled him at the Devereux Glenholme School in Connecticut for the 1996–97 school year, because she could no longer meet his needs at home. The District notified Kerry that she had the right to choose to have her child educated at her expense at such a private school, but that the public education offered by the District was sufficient. In August 1996, and again in October 1996, Kerry requested that the District re-evaluate Jared, stating that the District could not meet his need for full-time residential care to address his academic, emotional and behavioral needs. (R.R. at 120a.) In May 1997, the District finally prepared a Comprehensive Evaluation Report, based upon psycho-educational and psychiatric evaluations conducted by Glenholme, Glenholme's mid-year evaluation of Jared, and Glenholme teacher interviews conducted by the District, and developed a new IEP for the 1997–98 school year. Kerry did not accept the new IEP proposed by the District, because she believed that Jared needs a 24–hour, structured environment.

On June 13, 1997, Kerry requested a due process hearing before the Department of Education, challenging the District's rejection of Jared's placement at Glenholme. Hearings were held before a Department of Education hearing officer, and on September 16, 1997, the hearing officer issued a decision finding that the District had provided Jared with a meaningful education program in the past and has the ability to do so at the

---

1. Under Department of Education regulations, "Other Health Impairment" is a category of physical or mental disability that renders a student "eligible" for special education. 22 Pa. Code § 141.1.

2. "An IEP is a written plan for the appropriate education of an exceptional student." 22 Pa. Code § 14.31(b). The specific requirements for an IEP include annual goals and short-term learning outcomes, the specific special education services and programs and related services to be

provided to the student, and appropriate objective criteria, assessment procedures and timelines for determining whether goals and outcomes are being achieved. 22 Pa.Code § 14.32(f).

3. Upon discharge from Hershey, Jared's diagnosis included attention-deficit/hyperactivity disorder, adjustment disorder with mixed disturbance of emotions and conduct, and chronic motor tic disorder. (R.R. at 95a.)

present time. The decision also found that Kerry had not proved that Jared requires a residential program and denied her request for reimbursement for the tuition at Glenholme. Kerry filed exceptions to the hearing officer's decision, and on November 10, 1997, the Appeals Panel issued a decision reversing the hearing officer. The decision requires the District to provide one year of compensatory education and reimbursement for Jared's tuition at Glenholme for the 1996–97 school year. The panel also concluded that because Jared's IEPs for the 1995–96 and 1996–97 years failed to comply with the requirements of state and federal law, he was denied a free and appropriate education, and that policies of the District relating to counseling and home schooling were violative of state law. The District has now appealed to this Court.

The District raises the following issues for our review:[4] 1) whether it provided a free and appropriate education for Jared; and 2) whether the Appeals Panel committed an abuse of discretion or error of law when it *sua sponte* determined that Jared's 1995–96 and 1996–97 IEPs and the District's procedures on IEP preparation and home schooling violate Pennsylvania and federal law. The District argues, generally, that because it is able to provide Jared with an appropriate educational program, and because he does not require 24–hour care and constant supervision, it should not be responsible for his tuition at Glenholme. We agree with Jared and his mother, however, that the District should be compelled to provide Jared with a residential program because he failed to make meaningful educational progress while in the District's programs.

 Under the Federal Individuals with Disabilities Education Act (IDEA), 20 U.S.C.

§§ 1400–1485, states receiving federal assistance are required to provide all handicapped children with a free appropriate public education.[5] 20 U.S.C. § 1412(1). A "free appropriate public education" means special education and related services that are provided at public expense and supervision, which meet the standards of the state educational agency and are provided in conformity with an individualized education program. 20 U.S.C. § 1401(a)(18). The state must provide special education and sufficient related services to meet the child's unique needs in the least restrictive environment. *See Big Beaver Falls Area School District v. Jackson,* 155 Pa.Cmwlth. 219, 624 A.2d 806, *petition for allowance of appeal denied,* 535 Pa. 676, 636 A.2d 635 (1993). If a school district does not comply with the requirements of the IDEA, appropriate remedies include compensatory education and tuition reimbursement. *Millersburg Area School District v. Lynda T.,* 707 A.2d 572 (Pa.Cmwlth.1998); *Punxsutawney Area School District.*

Under the IDEA, states must establish procedures to assure that disabled children are educated with children who are not disabled and that special classes, separate schooling or other removal of children with disabilities from the regular education environment occurs only when the nature or severity of the disability is such that education in regular classes with the use of supplementary aids and services cannot be achieved satisfactorily. 20 U.S.C. § 1412(5)(B). This requirement, known as "mainstreaming," *see Millersburg Area School District,* is also favored under Pennsylvania law. Department regulations provide that an educational placement for eligible students should be "in the regular

---

4. The scope of our review of a decision of the Special Education Appeals Panel is limited to determining whether the adjudication is supported by substantial evidence, or whether errors of law were committed or constitutional rights violated. *Punxsutawney Area School District v. Kanouff,* 663 A.2d 831 (Pa.Cmwlth.1995). The Appeals Panel is the ultimate fact-finder and is charged with making an independent examination of the evidence of record, subject to review by this Court. *Id.*

5. "Handicapped children" include children with serious emotional disturbance, with other health impairments, or with specific learning disabilities. 20 U.S.C. § 1401(a)(1). "Children with specific learning disabilities" include children who have a disorder in one or more of the basic psychological processes involved in understanding or in using language. 20 U.S.C. § 1401(a)(15). There is no dispute in this case that the IDEA is applicable to Jared or that he is eligible for "special education and related services."

educational environment of the regular public school which the student would attend if not exceptional, unless the IEP team determines that the IEP cannot be implemented in that placement even with supplemental aides and services." 22 Pa. Code § 14.42. The regulations provide for alternative placements if mainstreaming cannot be accomplished, including placements in approved private schools [6] and out-of-state schools.[7]

■ The Appeals Panel in the case at bar concluded that because the District had not provided Jared with a free and appropriate education based on the 1995–96 and 1996–97 IEPs, a residential placement outside of his regular educational environment was necessary to meet his social and emotional, as well as his academic, needs. We agree.

The District argues initially that it is able to provide Jared with a free and appropriate public education, and so it should not be responsible for reimbursement of Jared's tuition. In support of its position, the District cites *Florence County School District Four v. Carter*, 510 U.S. 7, 114 S.Ct. 361, 126 L.Ed.2d 284 (1993), in which the Supreme Court recognized that under the IDEA, school authorities may be ordered to reimburse parents who unilaterally change their child's educational placement to a private facility for their expenditures only if it is ultimately determined that such placement, rather than a proposed IEP, is proper. *See also Susquenita School District v. Raelee S.*, 96 F.3d 78 (3d Cir.1996). Moreover, the District claims that the courts have denied tuition reimbursement for private, residential placements when the student is exhibiting

progress and receiving an appropriate education in the public school environment, no matter how egregious his or her behavior is in the home.[8]

The Appeals Panel did not find that Jared was exhibiting progress in the District's programs or that a public placement was proper. Rather, it found as fact that the program offered by the District had not been effective because Jared's social and emotional needs were not addressed by his IEP and because his behavior continued to worsen. As cited by Kerry, the standard used by the Supreme Court to test IDEA compliance is whether the IEP is reasonably calculated to enable the child to receive educational benefits. *See Board of Education v. Rowley*, 458 U.S. 176, 102 S.Ct. 3034, 73 L.Ed.2d 690 (1982). According to the Appeals Panel, Jared's emotional and social needs should have been part of his IEP, as these needs must be addressed by a school in conjunction with academics. Based on the Appeals Panel's findings, the IEPs offered by the District were not calculated to benefit Jared educationally, as required by *Rowley*, because they did not adequately encompass his academic, emotional or social needs.

Because the Appeals Panel found that the IEPs developed by the District were inadequate and that Jared's behavior and demeanor improved since he enrolled at Glenholme, it concluded that Jared currently needs a residential placement. The record supports this conclusion, and it is consistent with the IDEA. We, accordingly, agree with the Appeals Panel that because the District failed to offer Jared a free and appropriate education,

6. 22 Pa.Code § 14.43.

7. 22 Pa.Code § 14.44. With regard to out-of-state placement, the regulations provide that an eligible student may be placed in an out-of-state school if the following conditions are met:
 (1) There is no appropriate program for placement of the student in the school districts, intermediate units or approved private schools in this Commonwealth.
 (2) The parents and the chief administrative officer of the school district or entity with which the Department has a mutually agree-upon written arrangement relating to early intervention services agree that there is no appropriate placement in this Commonwealth.

(3) The parents consent to the placement.
(4) The out-of-State school has been approved by the state education agency of the state in which the school is located, or another agency of that state recognized for this purpose by the Secretary [of Education].
22 Pa.Code § 14.44(a).

8. *See, e.g., Cypress–Fairbanks Independent School District v. Michael F.*, 118 F.3d 245 (5th Cir. 1997) *cert. denied*, —— U.S. ——, 118 S.Ct. 690, 139 L.Ed.2d 636 (1998); *El Paso Independent School District v. Robert W.*, 898 F.Supp. 442 (W.D.Tex.1995).

Kerry is entitled to reimbursement for tuition she paid to Glenholme.[9]

■ The District's second issue on appeal is whether the Appeals Panel erred in addressing *sua sponte* the appropriateness of Jared's IEPs, as well as the District's policies on counseling and home schooling. There is no question, however, that the appropriateness of the IEPs was at issue. As Kerry argues, the District itself introduced the IEPs into evidence before the hearing officer, so they were in the record before the Appeals Panel. Moreover, contrary to the District's argument, Kerry did challenge the IEPs in her exceptions to the hearing officer's report rather than merely the manner in which they were implemented. (R.R. at 21a–29a.) Regardless, in reviewing a parent's decision to unilaterally remove a student from a public school for placement in a private institution, the issue before the Appeals Panel was whether the District provided an appropriate IEP. *See Florence County School District Four.* Accordingly, the Appeals Panel did not abuse its discretion in addressing the appropriateness of Jared's IEPs.

We conclude, therefore, that the Appeals Panel did not err in reversing the hearing officer's determination and concluding that the District must reimburse Kerry for Jared's tuition at Glenholme and provide a year of compensatory education.

### ORDER

AND NOW, this 22nd day of May, 1998, the November 10, 1997 order of the Special Education Appeals Panel is affirmed.

LEADBETTER, J., dissents.

---

9. The District also argues that Jared's mother is not entitled to reimbursement because she unilaterally decided to place him at Glenholme without following the proper procedures for out-of-state placement and never made a formal request for residential placement to the District. Although a parent who makes a unilateral decision to enroll a child in a private school because the public school has failed to provide an appropriate education does so at her own financial risk, *Florence County School District Four*, the parent does have the right to do so. Kerry made the decision to send Jared to Glenholme, and it was clear that the District would not agree with the placement.