**Breznicky v. Kmart Corp.**

*Derek R. Lauper,* for plaintiffs.
*W. Kelly McWilliams,* for defendant.

SYLVESTER, *J.,* April 16, 2001—

## FACTS AND PROCEDURAL HISTORY

The instant matter arose out of an accident that occurred on November 27, 1998, inside a Kmart store located in Willow Grove, Pennsylvania. On that date, plaintiff Linda Breznicky and her son, Jason, were shopping in the store when, while walking down aisle 7 to buy an item located there, Ms. Breznicky slipped on an unidentified transparent substance covering the floor at the end of the aisle and ended up on her hands and knees. At the time of her fall a yellow "caution" pylon or cone was sitting on the floor of aisle 7 approximately three quarters of the way down the aisle to the right which left a passageway to the left of the aisle. Ms. Breznicky and her son had walked about a foot or two past the pylon before she fell. She testified that she had seen the pylon as she walked down the aisle but paid it little attention because she saw them everywhere. It is noted that the defendant did not follow its own policy with respect to cleaning up the spill and protecting its customers from its danger.

After she fell, as she attempted to stand up, Ms. Breznicky again lost her footing. This time, she fell backwards onto her buttocks. She also struck her foot on the bottom of a shelf.

Following the incident, Ms. Breznicky reported it to store management. In a report prepared that day by Barry Tennant, Kmart's loss control manager for the Willow Grove store, the incident type was listed as a slip and fall caused by "spilled merchandise." Mr. Tennant admitted at trial that certain store policies had been violated with respect to the substance on the floor that caused Ms. Breznicky to fall.

While she was reporting the accident Ms. Breznicky felt pain in her knee and back. She went home and attempted to alleviate her symptoms by resting and through the use of a heating pad. However, when the pain in her knees, right foot and her back did not subside, she contacted Dr. John L. Beight, a specialist in orthopedic surgery.

According to Dr. Beight, Ms. Breznicky first saw him on December 1, 1998. She had tenderness in her back, medial tibial plateau, and on the bottom of her foot near her heel bone. The doctor attributed her pain to contusions and/or strain of her lumbar spine, knee and plantar fascia. She also had a contused nerve in her knee. The doctor prescribed Motrin and recommended that Ms. Breznicky obtain a Cam walker, which is a removable cast, for her foot.

Dr. Beight saw Ms. Breznicky on December 16, 1998, December 29, 1998 and February 2, 1999. She exhibited slow improvement on each visit. However, on February 2, 1999, she still had burning pain in her left knee which the doctor attributed to her contused nerve. The doctor recommended at the February visit that Ms. Breznicky continue to use the Cam walker but that she use it less every day.

Ms. Breznicky next visited Dr. Beight on April 7, 1999. She complained of pain in her back and although her knees still hurt, she could tolerate the pain. The doctor opined that her back pain could have been exacerbated by her use of the Cam walker. Due to the fact that she was still suffering from back pain, Dr. Beight ordered her to get a CAT scan. It revealed tenderness in her sacroiliac joint, a left-sided disc bulge between the third and fourth lumbar vertebrae and a right-sided vertebrae with a narrowing of the tunnel for the nerve leading to her leg.

To alleviate her pain, Dr. Beight recommended that Ms. Breznicky receive an epidural. She declined however and stated that she would continue with her exercises which gave her some relief.

Dr. Beight next saw Ms. Breznicky on July 2, 1999. She still had pain in her sacroiliac joint and although she had intermittent swelling in her right knee and foot, these problems were minor. She was no longer using the Cam walker at that time.

In January of 2000, Ms. Breznicky began experiencing extreme pain in her back. When it did not subside after five days she saw Dr. Beight on January 21, 2000. This time, she had extreme pain in both sacroiliac joints and Dr. Beight recommended that she continue taking an anti-inflammatory.

The doctor again saw her on January 31, 2000, and February 22, 2000. An MRI showed that she had spurs where the joints of her individual vertebrae meet.

According to Dr. Beight, all of Ms. Breznicky's complaints and injuries were directly caused by the fall in the Kmart in November of 1998. While he could not

state that her bulging discs were caused specifically by her fall, he indicated that the fall would have exacerbated any pre-existing back problem.

Ms. Breznicky testified that she still continues to suffer from back pain. She further testified that as a result of the fall, she cannot do many of her household tasks and chores as quickly or as well as she did prior to the accident.

Trial in this matter was conducted in November of 2000 before this court and a jury. At the conclusion of the case, the jury found for plaintiffs Linda and Charles Breznicky and awarded them $200,000 and $15,000 respectively. It is noted that although the jury found that Ms. Breznicky had been negligent, it concluded that her negligence had not been a substantial factor in causing her injuries.

Following the jury's verdict, defendant filed post-verdict motions that raise various challenges to the validity of the verdict.

## DISCUSSION

In its post-verdict motions, the defendant argues that it is entitled to a judgment n.o.v. because Ms. Breznicky failed to establish that the alleged slippery floor was a danger the defendant should have realized that Ms. Breznicky would not discover and protect herself against, where she admits that she walked past and admittedly saw a wet floor warning cone. Defendant submits that section 343 of the Restatement (Second) of Torts (1965) entitles it to the relief it seeks herein.

In *Adamski v. Miller,* 434 Pa. Super. 355, 359-60, 643 A.2d 680, 682 (1994) the court discussed the stan-

dard for reviewing the denial of a motion for judgment n.o.v. as follows:

"Our standard of review of an order denying judgment n.o.v. is whether there was sufficient competent evidence to sustain the verdict. *Wenrick v. Schloemann-Siemag Aktiengesellschaft,* 523 Pa. 1, 4, 564 A.2d 1244, 1246 (1989). The standard of review for an appellate court is the same as that for a trial court: judgment n.o.v. will be entered only in a clear case where the facts are such that no two reasonable minds could fail to agree that the verdict was improper. *Pirozzi v. Penske Olds-Cadillac-GMC,* 413 Pa. Super. 308, 311, 605 A.2d 373, 375 (1992). An appellate court will reverse a trial court ruling only if it finds an abuse of discretion or an error of law that controlled the outcome of the case. *Timbrook v. Foremost Insurance Co.,* 324 Pa. Super. 384, 387, 471 A.2d 891, 892 (1984).

"Our standard of review of a trial court's grant or denial of a motion for a new trial is, generally, whether the trial court clearly and palpably abused its discretion or committed an error of law which controlled the outcome of the case. *Stevenson v. General Motors Corp.,* 513 Pa. 411, 521 A.2d 413 (1987). If support for the court's decision is found in the record, the order must be affirmed. A new trial will only be awarded where the verdict is so contrary to the evidence as to shock one's sense of justice. *Giovanetti v. Johns-Manville Corp.,* 372 Pa. Super. 431, 439, 539 A.2d 871, 875 (1988)."

Applying the foregoing to the instant matter, it is clear that the defendant is not entitled to any relief. Under the law, possessors of land owe a duty to persons they invite upon their property. The case of *Kiehner v.*

*School District of Philadelphia,* 712 A.2d 810, 833-34 (Pa. Commw. 1998) makes this clear:

"In Pennsylvania, a possessor of land is liable for physical harm caused to invitees by a condition on the land if, but only if, he or she:

"(a) knows or by the exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk of harm to such invitees, and

"(b) should expect that they will not discover or realize the danger, or will fail to protect themselves against it, and

"(c) fails to exercise reasonable care to protect them against the danger.

"Restatement (Second) of Torts §343 (1965); *Carrender v. Fitterer,* 503 Pa. 178, 469 A.2d 120 (1983). The possessor of land, however, is not liable to the invitees for the injuries caused by any 'condition on the land whose danger is known or obvious to them, unless the possessor should anticipate the harm despite such knowledge or obviousness' Restatement (Second) of Torts §343(A)(1); *Carrender.*"

Instantly, the defendant's argument rests upon the fact that Ms. Breznicky acknowledged that she had observed the yellow warning cone and walked past it before she fell. This fact, however, does not free the defendant of liability for several reasons. First, Ms. Breznicky testified that she fell after she had walked past the cone about one foot. Thus, the cone was not located specifically in or on the spot where the substance was situated that caused Ms. Breznicky to fall.

In addition, the substance on the floor was not immediately discernable upon visual inspection. Ms. Breznic-

ky testified that she did not observe the substance that caused her to fall before she fell. (N.T. 11/13/00, p. 56.) Her son Jason corroborated her testimony that the spill was not immediately discernable merely by looking at the floor. (N.T. 11/13/00, p. 80.)

Finally, at the time of her fall, Ms. Breznicky was in the process of searching for a specific item in the store. That the attention of its patrons might be focused elsewhere and not on the floor renders the precautions taken by the defendant inadequate to excuse it from liability. The defendant should have realized that the placing of the cone would not suffice to warn its invitees of the danger posed by the invisible substance laying on the floor insofar as the attention of its invitees would be drawn to searching for the item they sought to purchase.

In *Mammoccio v. 1818 Market Street Partnership,* 734 A.2d 23, 33 (Pa. Super. 1999) the court had the occasion to quote from the comment to section 343A of the Restatement (Second) of Torts, in pertinent part, as follows,

"There are, however, cases in which the possessor of land can and should anticipate that the dangerous condition will cause physical harm to the invitee notwithstanding its known or obvious danger. In such cases the possessor is not relieved of the duty of reasonable care which he owes to the invitees for his protection. This duty may require him to warn the invitee, or take other reasonable steps to protect him, against the known or obvious condition or activity, if the possessor has reason to expect that the invitee will nevertheless suffer physical harm.

"Such reason to expect harm to the visitor from known or obvious dangers may arise, for example, where the possessor has reason to expect that the invitee's attention may be distracted, so that he will not discover what is obvious, or will forget what he has discovered, or fail to protect himself against it."

Instantly, the danger here was such that the defendant should have realized that the step it took to warn its invitees of the spill would be inadequate to warn its patrons of the dangerous condition under the circumstances existing at the time. This is so given that the warning cone was not placed in or on the spill, the substance on the floor was not discernible upon visual inspection, and the side of the aisle where Ms. Breznicky proceeded appeared to be open to patrons whose attention likely would be focused on finding the items they intended to purchase and not on the warning cone.

Accordingly, defendant's claim with respect to this issue should be denied.

Defendant next argues that the verdict was against the weight of the evidence because the jury, while finding that Ms. Breznicky was negligent, ruled that her negligence was not a substantial factor in causing her injuries. The defendant contends that it was error for the jury not to have found Mrs. Breznicky's conduct a substantial factor in causing her injuries because she admitted having seen the warning pylon and continued down the aisle anyway.

In *Alber v. Alter*, 252 Pa. Super. 203, 381 A.2d 459 (1977) our Superior Court provided an extensive discussion of the standard of review applicable to weight of the evidence claims. The court wrote:

"The law in Pennsylvania is well-settled, that ' "[t]he grant of a new trial is within the sound discretion of the trial judge, who is present at the offering of all relevant testimony, but that discretion is not absolute; this court will review the action of the court below and will reverse if it determines that it acted capriciously or palpably abused its discretion." *Austin v. Ridge,* 435 Pa. 1, 4, 255 A.2d 123, 124 (1969), and cases there cited. "A new trial should not be granted because of a mere conflict in testimony or because the trial judge on the same facts would have arrived at a different conclusion: [citation omitted]. Neither should it ordinarily be granted on the ground that the verdict was against the weight of the evidence where the evidence is conflicting and the jury might have found for either party." *Carroll v. Pittsburgh,* 368 Pa. 436, 445-46, 84 A.2d 505, 509 (1951). A new trial should be awarded on the ground that the verdict is against the weight of the evidence only when the jury's verdict is so contrary to the evidence as to shock one's sense of justice and the award of a new trial is imperative so that right may be given another opportunity to prevail. . . .' " *Alber,* 252 Pa. Super. at 212-13, 381 A.2d at 464. (citations omitted) See also, *Petrasovits vs. Kleiner,* 719 A.2d 799, 803 (Pa. Super. 1998).

The court will now address the plaintiffs' claim under the above standards.

A careful review of the record indicates that the verdict does not shock one's sense of justice and therefore, is not against the weight of the evidence because the jury could reasonably have found that Ms. Breznicky was negligent but that she, legally, was not responsible for her own harm. This is the case because of the place-

ment of the cone to the right of the aisle which left a passageway to the left of the aisle, the fact that the cone was not placed in or on the spill, the fact that the substance was not immediately discernible and that the defendant did not follow its own policy with respect to spilled merchandise. All of these theories for the jury's verdict are reasonable under the facts of the case and the law applicable thereto. Thus, this court will not overturn the findings of the jury as the verdict does not shock this court's sense of justice. See *James v. Nolan M.D.,* 418 Pa. Super. 425, 614 A.2d 709 (1992) (parties' own conduct negated negligence of other party).

It is noted that while in the cases cited by the defendant, *namely, Kruczkowska v. Winter,* 764 A.2d 627 (Pa. Super. 2000) and *Craft v. Hetherly,* 700 A.2d 520 (Pa. Super. 1997) the Superior Court did reverse verdicts for the respective defendants where the jury had found the defendants negligent but then found that such negligence was not a substantial factor in causing the plaintiffs' injuries, a careful review of those two cases indicates that they are inapposite to the instant matter. In these two cases, the defense did not question the fact that the plaintiffs suffered injuries as a result of the respective accidents. Here, on the other hand, the plaintiffs vigorously challenged the assertion that Ms. Breznicky was responsible for her own injuries. The plaintiffs pointed out inter alia, that the substance on the floor was not immediately discernable and that the defendant did not follow its own policies regarding spills. These facts could reasonably have caused the jury to find that Ms. Breznicky's negligence was not a substantial factor in causing her injuries. This court, upon

reviewing the record, sees no reason to reverse the jury's verdict based on the arguments presented by the defendant. Consequently, defendant's claim with respect to this issue should be denied.

Defendant next argues that this court erred in allowing the plaintiffs to introduce into evidence a photograph taken after Ms. Breznicky's fall which showed shopping carts blocking the aisle where she fell. The defendant claims that the photograph was inadmissible because it demonstrated that the defendant undertook subsequent remedial measures following Ms. Breznicky's accident.

While it is true, generally, that evidence of subsequent remedial measures is inadmissible, such evidence may be presented at trial to show that the defendant could have undertaken steps the cost of which were negligible in relation to the risk of danger involved, *Incollingo v. Ewing,* 444 Pa. 263, 282 A.2d 206 (1971); *Hyndman v. Pennsylvania Railroad Company,* 396 Pa. 190, 152 A.2d 251 (1959), or to show control or to impeach relevant testimony. *Leghart v. Montour Railroad Co.,* 395 Pa. 469, 150 A.2d 836 (1959).

In this case, the photograph was relevant and admissible to show not only that the defendant could have, at no cost, easily protected its invitees from the extreme danger the virtually invisible substance posed to them but also to show that the defendant did not follow its own policies with respect to the spill.

Under the circumstances, then, the defendant is not entitled to a new trial due to the admission of the photograph and this issue should be denied.[1]

---

1. It is noted that the defense points out in its brief that plaintiffs' counsel improperly referred to the photograph during his closing argu-

Fourthly, the defendant argues that this court committed reversible error when it permitted the plaintiffs to give the final closing speech to the jury. This court should not have done so, defendant claims, because no evidence was presented by the defense.

Rule 223.1(D) of the Philadelphia Rules of Civil Procedure provides:

"(D) After the evidence is closed, only one attorney for each party or group of parties may address the jury. The attorney for the party or group of parties having the burden of proof shall first sum up, stating explicitly the ground relied upon. The attorney for each adverse party or group of parties may then address the jury, and, if any such party has offered evidence, the attorney who commenced may conclude, restricting himself or herself to answering the arguments advanced."

Here, this court ruled that by and through its vigorous cross-examination of the plaintiffs' witnesses and its marking of three exhibits, the defendant presented a defense thus entitling the plaintiffs to the last speech. This ruling was not erroneous because it is clear from reading the record that the defendant's intent in conducting its cross-examinations of the plaintiffs' witnesses in the manner in which it did and in marking the three exhibits was to establish a defense to plaintiffs' claims. The defendant therefore waived its opportunity to give the final speech.

---

ment. However, any issue with respect thereto has been waived because the defendant did not object to the comment. In addition, defendant did not request a limiting instruction thereby waiving any issue he may have had with respect to this issue. *O'Malley v. Peerless Petroleum Inc.,* 283 Pa. Super. 272, 288-90, 423 A.2d 1251, 1260 (1980).

Even assuming that the court erred in allowing plaintiffs' counsel to give the final closing address to the jury, the grant of a new trial is unwarranted insofar as the defendant has not indicated in what way it was prejudiced by the ruling. Without some indication that the defendant suffered prejudice as a result of this court's ruling, the grant of a new trial would be inappropriate here. Accordingly, for the reasons stated, the defendant's claim with respect to this issue should be denied.

In its final claim, the defendant argues that it is entitled to a remittitur because the amount of the award is exorbitant and excessive. This court does not agree.

The law is clear that a judge should reverse a jury award "only when [it] is plainly excessive and exorbitant, when it shocks the sense of justice as to suggest that the jury was influenced by partiality, prejudice, mistake, or corruption." *Paves v. Corson,* 765 A.2d 1128, 1137 (Pa. Super. 2000). The fact that a verdict is large in and of itself is not evidence of excessiveness. *Layman v. Doernte,* 405 Pa. 355, 175 A.2d 530 (1961).

In this case, the record is devoid of any evidence indicating that the verdict amount resulted from partiality, prejudice, mistake or corruption. The jury heard testimony indicating that Ms. Breznicky fell not once but twice and as a result thereof, she suffered serious injury to various parts of her body including her back, knees and foot. The jury also was presented with evidence that at the time of the trial, Ms. Breznicky still had pain as a result of the accident and that as a result of the accident her husband suffered a loss of consortium. Based on these facts, the court sees no reason why the verdict

amount should be reduced and therefore, the defendant's claim with respect to this issue should be denied.

## CONCLUSION

Based on the foregoing, defendant's post-trial motions are denied.

## ORDER

And now, April 16, 2001, it is hereby ordered and decreed that defendant's post-verdict motions are denied.

It is further ordered and decreed that plaintiffs' motion for delay of damages is granted. The verdict in the amount of $215,000 is hereby molded to include delay damages in the amount of $4,085 for a total award of $219,085.

Judgment is entered accordingly.