## MIFFLIN COUNTY SCHOOL DISTRICT, Petitioner,

v.

## SPECIAL EDUCATION DUE PROCESS APPEALS BOARD, Respondent.

Commonwealth Court of Pennsylvania.

Argued April 10, 2002.

Decided June 20, 2002.

Orris C. Knepp, III, Lewistown, for petitioner.

Rebecca L. Ardoline, State College, for petitioner.

Before SMITH–RIBNER, Judge, and LEAVITT, Judge, and FLAHERTY, Senior Judge.

OPINION BY Judge SMITH–RIBNER.

The Mifflin County School District (District) petitions for review of the August 8, 2001 order of the Special Education Due Process Appeals Review Panel (Panel) which concluded that Kaitlyn Fisher (Kaitlyn) had been denied free appropriate public education based on the inadequacy of a 1999 multi-disciplinary evaluation (MDE) conducted by the District.[1] The District questions whether the Panel committed reversible error in considering the appropriateness of the 1999 MDE sua sponte when it had not been raised before the Hearing Officer, in failing to order additional evidence on the issue because a full factual record had not been created below, in ordering the District to employ outside experts to develop a new individualized education program (IEP) and in awarding Kaitlyn's parents (Fishers) 450 hours of compensatory education when they failed to cooperate in releasing all of Kaitlyn's medical records for review by the District's IEP team.[2]

**1.** An MDE is an evaluation performed to determine whether the student suffers a disability and qualifies for special education services. *See* 22 Pa.Code § 14.123, incorporating 34 C.F.R. §§ 300.531—300.535. Pursuant to 34 C.F.R. § 300.532(g) and (h), the MDE evaluation shall assess the child in all areas related to the suspected disability and shall be sufficiently comprehensive to identify all of the child's special education and related service needs.

**2.** An IEP is a written statement developed for a disabled child that must include: a statement of the child's present levels of educational performance; a statement of measurable annual goals, including benchmark or short-term objectives; a statement of special education services and aids provided to the

In the fall of 1997 Kaitlyn entered the District as a kindergartener. In September 1998 the Fishers and the District entered into a Section 504/Chapter 15 Service Agreement, which identified Kaitlyn's condition as spinal muscular atrophy, a degenerative neuromuscular condition.[3] In February 1999 the Fishers requested and consented to an MDE evaluation to determine if Kaitlyn qualified for special education services. In April 1999 the District's multi-disciplinary team developed a Comprehensive Evaluation Report (CER), concluding that Kaitlyn was eligible for such services, which the Fishers signed. The District then developed an IEP in May 1999 that included consultative physical therapy once a month and consultative occupational therapy without a specified frequency. It sent a Notice of Recommended Assignment (NORA) and the IEP to the Fishers, who refused to sign. Kaitlyn's neurologist and physical therapist recommended an exercise program with a trained professional and occupational therapy and physical therapy, and the District then drafted another IEP/NORA, which the Fishers again refused to sign. Kaitlyn's IEP/NORA for second grade were modified after mediation. The Fishers refused extended school year services the District offered.

In November 2000 the District began to prepare an IEP/NORA for Kaitlyn's third grade year, consisting of weekly physical therapy, consultation with an occupational therapist throughout the fall semester and a teacher's aide to consult with Kaitlyn's physical therapist. The Fishers rejected this IEP/NORA, opting for a pretrial conference or due process hearing, and they filed a complaint with the Bureau of Special Education's Division of Compliance Monitoring and Planning. Additional meetings to revise the IEP/NORA were also unsuccessful. At a February 2001 pretrial conference, the District provided the Fishers with a consent form for a complete copy of Kaitlyn's medical records, which they did not return until April 2, 2001. The District prepared another IEP/NORA, which the Fishers rejected. The Fishers were thereafter granted a due process hearing.

The issues before the Hearing Officer included: (1) whether Kaitlyn was receiving the appropriate physical education; (2) whether she was receiving appropriate occupational therapy, and if so, what should be the frequency and duration; (3) whether she was eligible for more than one physical therapy session per week during the school year; and (4) whether she was eligible for extended school year services beyond the six weeks of therapy offered during the summer. The Hearing Officer required modifications to Kaitlyn's IEP and physical therapy during the summer. He did not rule on the appropriate frequency, nature or duration of the occupational therapy, although he did suggest that the District incorporate more specificity into Kaitlyn's adaptive physical edu-

student; an explanation of the extent to which the student will not participate with nondisabled students in the regular class; a statement of any individual modifications in the administration of state assessments of student achievement that are needed for the child to participate in the assessment; the projected date for the beginning of the services and modifications and the anticipated frequency, location and duration of those services and modifications; and a statement of how the student's progress toward the annual goals will be measured. 22 Pa.Code §§ 14.131 and 14.154, 34 C.F.R. § 300.347(a)(1)-(7).

**3.** A Section 504 Service Agreement is a written agreement between the District and a handicapped student's parents indicating the aides, services and accommodations required. *See* Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794, and 22 Pa.Code § 15.2.

cation.[4] The Hearing Officer did not address compensatory education.

The Panel concluded by a preponderance of the evidence that the physical and occupational therapy the District provided was sufficient to allow Kaitlyn to profit from this service, and it did not order a change in the frequency or duration of the service. Similarly, the Panel concluded that the District's adaptive physical education program and the procedures followed by the regular and adaptive physical education teachers were appropriate and consistent with federal regulations. 34 C.F.R. § 300.307. Because the physical and occupational therapy was sufficient, the Panel denied the Fishers' request for 282 hours of compensatory education based on the inadequacy of this therapy. The Panel concluded that the Hearing Officer erred in ordering physical and occupational therapy as Kaitlyn's extended school year program because it was not required.

■ As for the 1999 MDE, the Panel considered whether the District appropriately performed it even though the issue had not been raised before the Hearing Officer or in the Fishers' exceptions. Based on requirements of Section 612 of the Individuals with Disabilities Education Act, 20 U.S.C. § 1412, which mandates states to offer a free appropriate public education to students who qualify for special education services, the Panel awarded the Fishers 450 hours of compensatory education, the equivalent of one hour per day for 450 school days. The award was made because Kaitlyn's MDEs, according to the Panel, did not comply with state regulations. The Panel concluded that Kaitlyn was denied appropriate services from February 1999 when the Fishers consented to an MDE through the 2000/01 school year, or 450 school days. It also ordered the District to employ outside experts to conduct a medical and appropriate occupational and physical therapy and assistive technological evaluations. The District was ordered to develop an IEP that was responsive to these evaluations.[5]

The District argues that the Panel overstepped its authority by raising sua sponte the appropriateness of the 1999 MDE as that issue was not developed before the Hearing Officer. Moreover, the District asserts, the Panel was precluded from raising the issue sua sponte because the Fishers did not exhaust all administrative remedies, citing *Jackson v. Centennial*

---

**4.** The Fishers alleged that the Hearing Officer erred, inter alia, in (1) concluding that Kaitlyn attended the District under a Section 504 agreement; (2) concluding that Dr. Scavina's recommendations for of physical therapy and occupational therapy were not part of the school record until April 1, 2001; (3) considering reports forwarded to Kaitlyn's physician which were not provided to their representative five days prior to the hearing; (4) giving complete deference to Kaitlyn's physical education and adaptive physical education teachers to determine whether physical education is unsafe for her and the extent to which she should be allowed to participate; (5) concluding that her adaptive physical education teacher was not required to attend her IEP meetings; (6) failing to award compensatory occupational therapy; (7) failing to award

compensatory physical therapy; and (8) failing to extend school year services and ordering that data be collected to determine whether Kaitlyn regresses or has problems with recoupment.

**5.** The Court's review of a Panel order is limited to determining whether constitutional rights were violated, whether an error of law was committed or whether necessary findings of fact are supported by substantial evidence. *Saucon Valley School Dist. v. Robert O.,* 785 A.2d 1069 (Pa.Cmwlth.2001). The Panel is the ultimate fact finder and is charged with making an independent examination of the evidence of record, subject to review by this Court. *Stroudsburg Area School Dist. v. Jared M.,* 712 A.2d 807 (Pa.Cmwlth.1998).

*School Dist.,* 509 Pa. 101, 501 A.2d 218 (1985), and *Colonial School Dist. v. Department of Education,* 145 Pa.Cmwlth. 74, 602 A.2d 455 (1992).[6] The District also argues that the 1999 MDE was not so necessarily entwined with the four issues litigated before the Hearing Officer so as to permit the Panel to consider the issue sua sponte. It maintains that this issue is one of first impression, directing the Court's attention to a federal district court memorandum opinion, which the Court may not consider.

The Fishers disagree that this issue is one of first impression, directing the Court's attention to *Millersburg Area School Dist. v. Lynda T.,* 707 A.2d 572 (Pa.Cmwlth.1998), and to *Stroudsburg Area School Dist. v. Jared M.,* 712 A.2d 807 (Pa.Cmwlth.1998). In *Millersburg* the district challenged a panel's sua sponte consideration of an emotionally disturbed child's past IEPs and past educational services. The Court concluded that these issues were raised at the hearings and in exceptions to the hearing officer's decision, and it noted that the district provided voluminous exhibits, including past IEPs and testimony regarding past educational services. In *Stroudsburg* the district challenged a panel's sua sponte consideration of the appropriateness of a child's IEPs and the district's policies on counseling and home schooling. The Court concluded that because the district introduced the IEPs into evidence and the parent challenged the IEPs in her exceptions, the panel did not abuse its discretion in ad-

dressing the appropriateness of the IEPs. The District distinguishes *Millersburg* and *Stroudsburg* on the basis that the Fishers did not raise the issue below, whereas in both of those cases, the parents raised issues in relation to specific documents in their exceptions.

 The Court rejects the Fishers' argument that this issue has already been decided in *Millersburg* and *Stroudsburg.* Unlike the situations in *Millersburg* and *Stroudsburg,* the Fishers clearly did not raise the issue of the appropriateness of Kaitlyn's 1999 MDE before the Hearing Officer, in their closing arguments or in their exceptions, and the Hearing Officer did not address it. The Court readily acknowledges that the Panel is the ultimate fact finder, but the Court cannot permit the Panel to raise and to decide an issue sua sponte without the benefit of a full factual record and adjudication on the issue, resulting in a premature interruption of the administrative process. *Colonial School Dist.* Further, the Panel had no authority to order the District to engage outside experts after finding that the physical and occupational therapy and adaptive education services were sufficient. *See Saucon Valley School Dist. v. Robert O.,* 785 A.2d 1069 (Pa.Cmwlth.2001) (panel exceeded its authority when it ordered district to hire outside experts to facilitate new IEP).

 The record demonstrates that the Panel's award for 450 hours of compensatory education was premised on a completely separate and distinct basis from the issues raised before the Hearing Offi-

---

**6.** In *Jackson* the Pennsylvania Supreme Court held that a discharged teacher who failed to appeal the decision of the Secretary of Education upholding her discharge could not bring a separate action in assumpsit based on her failure to exhaust her administrative remedies. In *Colonial School Dist.* the district challenged the Department of Education's eight percent cap of the excess costs of special

education reimbursements. Because the district failed to exhaust its administrative remedies, the Court concluded that it could not decide the merits of the case, reasoning that there would be a premature interruption of the administrative process without a complete record or an administrative adjudication to assist the Court in its determination.

cer. Under this circumstance, the Court cannot conduct a meaningful appellate review without a full factual record on whether Kaitlyn's 1999 MDE complied with all applicable regulations. The Court therefore vacates the Panel's award and remands this matter for an evidentiary hearing and an adjudication on the issue of the appropriateness of the MDE. Because the Panel erred in ordering the District to engage outside experts without supporting evidence in the record, the Court must reverse that part of the Panel's order. The Court affirms the Panel in all other respects.

### ORDER

AND NOW, this 20th day of June, 2002, the order of the Special Education Due Process Appeals Review Panel for 450 compensatory education hours is vacated, and this matter is remanded for hearing in accordance with the foregoing opinion. The Court reverses the Panel's order for the School District to engage outside experts to conduct specified evaluations. The Panel's order is affirmed in all other respects.

Jurisdiction is relinquished.