155 Pa. Commonwealth Ct. 219 (1993)
624 A.2d 806
BIG BEAVER FALLS AREA SCHOOL DISTRICT, Petitioner,
v.
Hope JACKSON, By and Through her mother and next friend Delores NESMITH; and Delores Nesmith, individually, Respondents.
Commonwealth Court of Pennsylvania.
Argued March 4, 1993.
Decided April 23, 1993.
*220 John J. Petrush, for petitioner.
Eugene A. Lincoln, for respondents.
Before McGINLEY and PELLEGRINI, JJ., and NARICK, Senior Judge.
NARICK, Senior Judge.
Big Beaver Falls Area School District (District) appeals the decision of a Pennsylvania Department of Education's Special Education Appeals Review Panel (Appeals Panel) that ordered compensatory education based on a finding that student Hope Jackson (Hope) had been unlawfully excluded from school by the District for more than fifteen days, during the 1991-92 school year, in violation of 22 Pa.Code § 14.35(c)(1). We affirm.
Hope, a student at the District's high school, is a child with disabilities, as defined in the Individuals with Disabilities Education Act (IDEA), 20 U.S.C. §§ 1400-1485.[1] Hope has *221 exhibited academic and behavioral problems since at least the fifth grade and has been classified as learning disabled. During the 1991-92 academic year, Hope, age fifteen, attended the ninth grade.[2] This is Hope's second appearance before this Court.[3]
During the pendency of Jackson I, Hope attended the District's high school for the 1991-92 academic year, under the "stay put" provisions of state and federal law.[4] The District had no obligation to change Hope's educational program during the pendency of that appeal and, unfortunately, Hope continued to exhibit behavior problems in school. In order to discipline Hope for her disruptive and problematic behavior, school officials suspended Hope from school for fourteen days and gave Hope in-school suspension (ISS) on eleven additional days.[5] State Board of Education regulations distinguish exclusion from school, or suspension, from exclusion from regular classes, or ISS. The two are considered different forms of disciplinary action. Compare 22 Pa.Code § 12.6 ("Exclusions from school") and 22 Pa.Code § 12.7 ("Exclusion from classes in-school suspension"). On seven occasions during the 1991-92 *222 academic year, Hope walked out of school rather than go to ISS.
As a result of these on-going problems, Hope's mother, Delores Nesmith (Nesmith) requested a due process hearing before a Special Education Hearing Officer (Hearing Officer), claiming that Hope had been excluded from school in the 1991-92 school year for more than fifteen cumulative days in violation of 22 Pa.Code § 14.35(c)(1). Several school officials, Nesmith, and Hope testified at the hearing. The hearing officer relied upon this testimony and the District's attendance and disciplinary records, concluding that the school had only suspended Hope for a total of fourteen cumulative days. Consequently, the Hearing Officer held that Hope was not entitled to any relief.
Nesmith appealed, and the Appeals Panel reversed, finding that Hope had been excluded from school for more than fifteen cumulative days.[6] The Appeals Panel stated that: "With regard to ISS, Hope was given a choice of `going to ISS or going home.' On seven occasions she chose to go home. This was a de facto suspension." (Appeals Panel Opinion, p.6.) As a result, the Appeals Panel awarded Hope a semester of compensatory education, in addition to the academic year compensatory education which it had previously awarded, and which this Court upheld in Jackson I.
The District appeals to this Court[7] arguing: (1) that the Appeals Panel erred as a matter of law in equating Hope's assignment to ISS with a de facto suspension, because substantial evidence existed that school officials did not intend to exclude Hope from school in assigning ISS; and (2) that the Appeals Panel improperly addressed, sua sponte, issues not raised by the parties.
*223 In Honig v. Doe, 484 U.S. 305, 108 S.Ct. 592, 98 L.Ed.2d 686 (1988), the United States Supreme Court held that under EHA (now IDEA), students with disabilities could not be unilaterally suspended or expelled from school for more than ten days without due process procedures. Suspension from school for more than ten consecutive days is considered a significant change in educational placement requiring due process measures under both Honig and 22 Pa.Code § 14.35(c)(1), which provides that:
(c) The following disciplinary exclusions are considered a change in educational placement:
(1) A disciplinary exclusion of an exceptional student for more than 10 consecutive school days or more than 15 cumulative school days in a school year is considered a change in educational placement requiring multidisciplinary evaluation, and notice to the parents and a right to a hearing under Sections 14.61-14.68 (relating to procedural safeguards) shall be afforded prior to the exclusion.
The District contends that it did not violate Hope's due process rights under 22 Pa.Code § 14.35(c)(1) because Hope was only formally suspended, i.e. excluded from school, on fourteen occasions during the 1991-92 school year, with the longest period of suspension being eight consecutive days. The District contends that the seven times that Hope left the school grounds, after being given ISS, represents acts of "willful misconduct" on her part, rather than an exercise of a choice given by school officials. Contrary to the District's assertions, Hope testified that she believed that assignment to ISS by school officials implied that she could choose between ISS and going home. The Appeals Panel apparently relied upon this testimony in determining that Hope's decision to leave school grounds on the seven occasions in question, rose to the level of a de facto suspension. There is, unfortunately, a dearth of caselaw on the concept of "de facto" suspension, or exclusion from a school setting. One thing is clear: in order for a state to receive federal assistance, the IDEA requires that the state provide a child with disabilities a "free, appropriate *224 public education" (FAPE)[8] based on the unique needs of the student. 20 U.S.C. § 1412. To meet the requirements of a FAPE, the state must provide a child with disabilities with special education and sufficient related services to meet the child's unique needs in the least restrictive environment. See 20 U.S.C. §§ 1401(a)(18) and 1412(5)(B) and 34 C.F.R. §§ 300.550-300.553 (1992).
The District asserts that school officials only intended to exclude Hope from regular classes, and not from school on the seven occasions in question. Yet, these same officials continued to assign Hope to ISS after it became abundantly clear that Hope would choose to leave school. In allowing this pattern to repeat itself, the school acted contrary to the dictates of both the IDEA and state regulations mandating that disabled children not be excluded from school without due process procedures. Thus, school actions in continuing to assign Hope to ISS, when they should have known that Hope would be excluded from school, and not just from regular classes, can be considered a de facto or constructive suspension, because these actions resulted in a substantial interference with Hope's rights to a FAPE under the IDEA. The appropriate remedy, when a student's statutory rights under the IDEA are violated, is compensatory education. Lester H. v. Gilhool, 916 F.2d 865 (3d Cir.1990), cert. denied, ___ U.S. ___, 111 S.Ct. 1317, 113 L.Ed.2d 250 (1991).
The District's second argument is that the Appeals Panel improperly addressed, sua sponte, "issues" not raised by the parties. Specifically, the District argues that the Appeals Panel criticized both the District's ISS program and *225 the District's obedience to the "stay put" provisions of federal and state law. However, it is clear from the Appeals Panel's opinion that the decision to award Hope compensatory education was based solely upon the finding that Hope had been excluded from school for more than fifteen days during the 1991-92 school year. Moreover, the District took this present appeal without benefit of the decision subsequently rendered by this Court in Jackson I. Any challenge the District may have had to the necessity of modifying Hope's educational program was rendered moot by our September, 1992 decision in that case.
Accordingly, we affirm.

ORDER
AND NOW, this 23rd day of April, 1993, the order of the Special Education Appeals Review Panel of the Commonwealth of Pennsylvania in the above-captioned matter is hereby affirmed.
NOTES
[1] Formerly the Education of the Handicapped Act (EHA).
[2] Hope subsequently failed, and is currently repeating the ninth grade for the second time.
[3] In Big Beaver Falls Area School District v. Jackson, 150 Pa. Commonwealth Ct. 268, 615 A.2d 910 (1992) (Jackson I), this Court upheld an Appeals Panel determination, that cited the inadequacy of Hope's individualized education program (IEP), and ordered the District to provide Hope with one academic year of compensatory education. Under the IDEA as implemented by Commonwealth regulations, a school district must develop an IEP for each child with a disability. 22 Pa.Code § 14.32, see also, 20 U.S.C. § 1412.
[4] 20 U.S.C. § 1415(e)(3) states:

During the pendency of any proceedings conducted pursuant to this section, unless the state or local educational agency and the parents or guardian otherwise agree, the child shall remain in the then current educational placement of such child, or, if applying for initial admission to a public school, shall, with the consent of parents or guardian, be placed in the public school program until all such proceedings have been completed. See also, 22 Pa.Code § 14.61(b).
[5] In addition, Hope missed seventy-five days of school, was tardy sixteen days and had numerous class cuts during the 1991-92 academic year.
[6] Pennsylvania's implementation of the IDEA makes the Appeals Panel the ultimate finder of fact. Jackson I.
[7] Our review of a decision by a special appeals panel appointed by the Department of Education is limited to a determination of whether constitutional rights were violated, errors of law were committed, or the decision is supported by substantial evidence. 2 Pa.C.S. § 704.
[8] A "free appropriate public education" is defined in 20 U.S.C. § 1401(18) as:

Special education and related services that (A) have been provided at public expense, under public supervision and direction, and without charge, (B) meet the standards of the State educational agency, (C) include an appropriate pre-school, elementary, or secondary education in the State involved, and (D) are provided in conformity with the individualized education program required under Section 1414(a)(5) of this title. See also, 22 Pa.Code § 14.1 ("appropriate program").