**MILLERSBURG AREA SCHOOL DISTRICT, Petitioner,**

v.

**LYNDA T., as Parent and Next Friend of Billy T., a minor, Respondent.**

Commonwealth Court of Pennsylvania.

Argued Oct. 6, 1997.
Decided Feb. 4, 1998.

**574**

Frank P. Clark, Hummelstown, for petitioner.

Judith A. Gran, Philadelphia, for respondent.

Before PELLEGRINI and KELLEY, JJ., and MIRARCHI, Jr., Senior Judge.

MIRARCHI, Jr., Senior Judge.

Millersburg Area School District (School District) appeals from an order of the Pennsylvania Special Education Appeals Panel (Appeals Panel) which (1) reversed the decision of the special education hearing officer to continue to place Billy T. (Billy) at a school for emotionally disturbed children located outside the School District, and (2) awarded Billy compensatory education based on the School District's failure to comply with the "mainstreaming" requirement of the Individuals with Disabilities Education Act (Act), 20 U.S.C. §§ 1400—1485.

The relevant facts found by the Appeals Panel are as follows. Billy is a fourteen-year old, eighth-grade student with serious emotional disturbance, living with his mother in Millersburg, Pennsylvania. Billy began experiencing emotional and behavioral problems in fourth grade, while attending a school within the School District, and received services of the institutional support team. The subsequent individualized education program (IEP) for Billy dated June

10, 1993 provided for supplemental emotional support services and speech/language services.[1] However, the IEP did not include individualized behavior management programs.[2] Billy's behavior problems included the use of vulgar language, striking other students, pushing and fighting, not being prepared for class and stealing a locker key. At the September 30, 1993 consultation with Billy's mother, the counselor at the Capital Area Intermediate Unit (Intermediate Unit) learned that Billy had sustained a head injury in 1991 after being hit by a truck.

In fifth grade, Billy received a three-day in-school suspension for his escalated disruptive behaviors. In the subsequent comprehensive evaluation report, the multidisciplinary evaluation team identified Billy's behavior problems as attention span, impulsiveness, oppositional behaviors and lack of organizational skills. On June 9, 1995, the IEP team recommended that Billy be placed in a full-time emotional support class in the neighboring school district for seventh grade. Billy's mother approved the recommended placement by signing the notice of recommended assignment. The IEP still did not contain an individualized behavior management programs for Billy.

During seventh grade, Billy's disruptive behaviors escalated in and out of the class, and he received six one-day suspensions. Subsequently, the IEP dated February 22, 1996 deleted all inclusionary provisions and recommended placement of Billy at the Northumberland Center, a specialized emotional support school operated by the Intermediate Unit and located outside the School District. Billy's mother approved the placement change.

At the Northumberland Center, Billy's disruptive behaviors continued, and by the end

---

1. An IEP is a written statement for each disabled child developed by a representative of the local educational agency or an intermediate educational unit, which must include: (1) statements of the present levels of educational performance of the child, annual goals, the specific educational services to be provided to such child and the *extent* to which such child will be able to participate in regular educational programs, and needed transition services; (2) the projected date for initiation and anticipated duration of such ser-

vices; and, (3) appropriate objective criteria and evaluation procedures, and schedules for determining whether instructional objectives are being achieved. 20 U.S.C. § 1401(a)(20).

2. The behavior management program must include "a variety of techniques to develop and maintain skills that will enhance an individual student's or young child's opportunity for learning and self-fulfillment." 22 Pa.Code § 14.36(a).

of seventh grade, Billy was receiving failing grades in many subjects. At the May 1, 1996 IEP team meeting, Billy's mother disapproved the continued placement of Billy at the Northumberland Center for eighth grade and requested mediation. Later, the School District and Billy's mother entered into an agreement, in which the School District agreed to provide regular reports of Billy's behavior to Billy's mother, to provide paraprofessional services to Billy, to restrain and discipline Billy carefully, and to specify Billy's exit criteria. The subsequent IEP dated October 8, 1996 included a one-on-one paraprofessional services for two weeks and provided for counseling, psychiatric services and vocational support on an "as needed" basis. However, the IEP still did not contain an individualized behavior management program. During eighth grade, Billy's behavioral problems and his academic performance further deteriorated.

On December 6, 1996, Billy was severely injured in an altercation with another student on the school bus. On December 9, 1996, Billy's mother requested a due process hearing pursuant to 22 Pa.Code § 14.64, seeking an inclusionary placement of Billy in the neighborhood school. After hearings, the hearing officer determined that Billy should stay at the Northumberland Center. The hearing officer, however, ordered the School District to add services of an institutional aide to Billy's October 8, 1996 IEP.

■ The Appeals Panel subsequently granted exceptions filed by Billy's parent and reversed the hearing officer's decision, concluding that the School District failed to comply with of the Act.[3] The Appeals Panel also awarded Billy compensatory education, directing the School District to promptly develop and implement a one-year IEP for Billy, which should include an individualized behavior management plan; services of a behavior

3. The Appeals Panel affirmed with some modification part of the hearing officer's order requiring the School District to provide services of an institutional aide to Billy.

4. This Court's scope of review of the Appeals Panel's decision is limited to determining whether constitutional rights were violated, whether an error of law was committed, or whether neces-

specialist for at least three hours a day; services of a full-time paraprofessional; an initial placement of Billy in regular classes and non-academic activities for at least half of the school day, to be increased or decreased as determined by the behavior specialist; special training of the regular classroom teachers by the behavior specialist; one-on-one counseling and behavior therapies for at least one hour a day; and an opportunity for weekly parent counseling and training. The Appeals Panel further directed the School District to promptly conduct a neurological evaluation of Billy to determine a possible effect of Billy's 1991 head injury on his emotional problems. The School District's appeal to this Court followed.[4]

In order to qualify for federal assistance, a state must have "in effect a policy that assures all children with disabilities the right to a free appropriate public education." 20 U.S.C. § 1412(1).[5] To meet this requirement, the state must establish, *inter alia:*

(B) procedures to assure that, to the maximum extent appropriate, children with disabilities ... are educated with children who are not disabled, and that special classes, separate schooling or other removal of children with disabilities from the regular educational environment occurs only when the nature or severity of the disability is such that education in regular classes with the use of supplementary aids and services cannot be achieved satisfactorily.

20 U.S.C. § 1412(5)(B).

■ The requirement set forth in Section 1412(5)(B) of the Act is known as "mainstreaming." *See Board of Education v. Holland,* 786 F.Supp. 874 (E.D.Cal.1992), *aff'd,* 14 F.3d 1398 (9th Cir.1994), *cert. denied,* 512 U.S. 1207, 114 S.Ct. 2679, 129 L.Ed.2d 813 (1994). Under this mainstreaming preference of the Act, the participating states are

sary findings of fact are supported substantial evidence. *New Brighton Area School District v. Matthew Z.,* 697 A.2d 1056 (Pa.Cmwlth.1997).

5. The definition of the term "children with disabilities" under the Act includes children with "serious emotional disturbance." 20 U.S.C. § 1401(a)(1)(A)(i).

required to "educate disabled children with nondisabled children whenever possible." *Board of Education v. Rowley,* 458 U.S. 176, 102 S.Ct. 3034, 73 L.Ed.2d 690 (1982).[6] In a proceeding challenging the school district's placement of a disabled child, the school district has the burden of proving that the segregated placement of the disabled child complies with the mainstreaming requirement of the Act. *Oberti v. Board of Education,* 995 F.2d 1204 (3rd Cir.1993).

In *Oberti,* the United States Court of Appeals for the Third Circuit adopted the two-part test for determining whether a school district satisfied the mainstreaming requirement of the Act: (1) whether the disabled child can be educated satisfactorily in a regular classroom with supplementary aids and services; and, (2) if removal of the child from the regular classroom is justified, whether the school district has included the child in school programs with nondisabled children to the maximum extent appropriate.

In determining whether the first part of the test is met, several factors, including the following three factors, must be considered:

(1) whether the school district has made reasonable efforts to accommodate the child in a regular classroom; (2) the educational benefits available to the child in a regular class, with appropriate supplementary aids and services, as compared to the benefits provided in a special education class; and (3) the possible negative effects of the inclusion of the child on the education of the other students in the class.[7]

*Oberti,* 995 F.2d at 1217–18.

■ The School District contends that in determining the proper location of Billy's education, only the current IEP is relevant and that therefore, the Appeals Panel's *sua sponte* consideration of Billy's past IEPs and the past educational services provided by the School District was improper.

Contrary to the School District's contention, our review of the record shows that at the hearings and in the exceptions to the hearing officer's decision, Billy's parent raised the issues of the appropriateness of the past IEPs, lack of behavior management programs and the School District's failure to consider a full range of supplementary aids and services, before it removed Billy to the segregated classes. *See* N.T., pp. 24, 515–16; Exceptions to Hearing Officer's Decision Nos. 1–2, 3–6.

Moreover, the School District does not dispute the applicability of *Oberti* in this matter. Under the *Oberti* test, the issue of the School District's compliance with the mainstreaming requirement of the Act cannot be resolved without examining the past IEPs and educational services provided to Billy while he was in the regular classes with nondisabled children. At the hearings, the School District itself presented voluminous exhibits, including the past IEPs, and the testimony regarding the educational services provided to Billy in fourth through eighth grade. Therefore, we reject the School District's contention that the Appeals Panel improperly considered *sua sponte* Billy's past educational history.

■ To implement the procedures set forth in 20 U.S.C. § 1415 for reviewing the local educational agency's placement of a disabled child, Pennsylvania adopted the two-tier due process hearing procedure, i.e., review by a hearing officer and the Appeals Panel. *See* 22 Pa.Code § 14.64. Under this scheme, the Appeals Panel is the ultimate factfinder and charged with making an independent examination of the evidence in the record. *Punxsutawney Area School District v. Kanouff,* 663 A.2d 831 (Pa.Cmwlth.1995). Therefore, the Appeals Panel is not bound by the decision of the hearing officer, and its scope of review is not restricted to determining whether the hearing officer's factual find-

---

6. Under 34 C.F.R. § 300.552(a) and (c), the educational placement of a disabled child must be based on his or her IEP and as close as possible *to the* child's home, and unless the IEP of the disabled child requires some other arrangement, the child must be educated in the school that he or she would attend if not disabled.

7. Additional factors, such as cost, may also be relevant depending on the circumstances of the specific case. *Oberti,* 995 F.2d at 1218 n. 25.

ings are supported by substantial evidence. *Id.*[8]

The Appeals Panel found that the School District failed to provide a full range of supplementary aids and services to Billy when he was in the inclusionary setting in fifth and sixth grade before he was removed to the Northumberland Center. The Appeals Panel specifically found the following cumulative deficiencies which resulted in denying Billy a free appropriate public education:[9] (1) failure to provide counseling and services of a paraprofessional in the regular classroom despite the recommendations made by its psychologist and in a comprehensive evaluation report; (2) failure to train Billy's regular classroom teachers to accommodate his needs; (3) failure to include individualized behavior management programs in the IEPs; and, (4) failure to conduct a neurological evaluation to determine possible effects of Billy's known head injury on his behavior problems.[10]

▮ The School District does not dispute these findings made by the Appeals Panel. In *Oberti*, the Court stated:

> [T]he school 'must consider the whole range of supplemental aids and services, including resource rooms and itinerant instruction,' ... speech and language therapy, special education training for the

regular teacher, behavior modification programs, or any other available aids or services appropriate to the child's particular disabilities. The school must also make efforts to modify the regular education program to accommodate a disabled child.... If the school has given no serious consideration to including the child in a regular class with such supplementary aids and services and to modifying the regular curriculum to accommodate the child, then it has most likely violated the Act's mainstreaming directive. 'The Act does not permit states to make mere token gestures to accommodate handicapped students; its requirement for modifying and supplementing regular education is broad.'

*Oberti*, 995 F.2d at 1216 (citations omitted).

In this matter, it is undisputed that Billy has a serious emotional disturbance. The School District, however, failed to include individualized behavior management programs in the IEPs in violation of 22 Pa. Code § 14.36(b), which specifically provides that "[f]or each eligible student or young child who exhibits behavior problems which interfere with the student's ability to learn, including students identified as seriously emotionally disturbed, the IEP shall include provisions for a program of behavior management...."[11] Further, the School Dis-

---

**8.** We reject the School District's argument that the Appeals Panel exceeded its scope of review in rejecting the hearing officer's credibility determinations without giving proper deference to his factual findings. In *Carlisle Area School District v. Scott*, 62 F.3d 520 (3rd Cir.1995), *cert. denied*, 517 U.S. 1135, 116 S.Ct. 1419, 134 L.Ed.2d 544 (1996), a case relied on by the School District, the Court of Appeals for the Third Circuit, held that appeals panels reviewing a hearing officer's factual findings in two-tier review schemes, such as Pennsylvania's, exercise plenary review, "except they should defer to the hearing officer's findings based on credibility judgments unless the non-testimonial, extrinsic evidence in the record would justify a contrary conclusion or unless the record read in its entirety would compel a contrary conclusion." *Id.* at 529. The Court noted, however, that 20 U.S.C. § 1415(c) "suggests not that the appellate body should defer but that it should reach a decision based on its own evaluation of the evidence, 'independent' of the findings of the hearing officer." *Id.* at 528. In this matter, the Appeals Panel's decision was based not on its rejection of the hearing officer's credibility determinations, but on its legal con-

clusion that the facts in this matter do not meet the *Oberti* test. Hence, the School District's reliance on *Scott* is inapposite.

**9.** The term "free appropriate public education" is defined as special education and related services that "(A) have been provided at public expense, under public supervision and direction, and without charge, (B) meet the standards of the State educational agency, (C) include an appropriate preschool, elementary, or secondary school education ..., and (D) are provided in conformity with the individualized education program...." 20 U.S.C. § 1401(a)(18).

**10.** While Billy's mother initially approved the placement of Billy at the school in the neighboring school district and the Northumberland Center, such prior approval is not relevant under the *Oberti* test.

**11.** The School District asserts that although it did not physically attach behavior management programs to the IEPs, it provided such programs

trict failed to conduct a neurological evaluation to determine a possible effect of Billy's 1991 head injury despite its knowledge of that injury. Such failure violates 22 Pa. Code § 14.36(a), which provides that "[p]otential causes of behavior problems, such as physical or medical conditions .... shall be reviewed and addressed prior to development of a behavior management program." Finally, the School District failed to provide services of a paraprofessional and a behavior specialist, in-school counseling and family counseling despite the recommendations made by its psychologist and the comprehensive evaluation report, and failed to train the regular classroom teachers to accommodate Billy in the regular classes.

Hence, the Appeals Panel's conclusion that the School District failed to take reasonable steps to mainstream Billy in the regular classroom with supplementary aids and services is amply supported by the record.

As to the second factor for determining whether Billy could be educated satisfactorily in the regular classroom, any comparison of the benefits available to Billy in the regular classroom with supplementary aids and services and the benefits to be obtained in the segregated classroom cannot be made due to the School District's failure to provide such aids and services to Billy in the regular classes. It must be noted, however, that the record establishes that Billy's behavior and academic performance further deteriorated after he was placed at the Northumberland Center.

In considering the third factor, i.e., a possible negative effect of the disabled child on other students, the question of whether the school district has fulfilled its obligation to provide the disabled child with supplementary aids and services is also relevant because "[a]n adequate individualized program with such aids and services may prevent disruption that would otherwise occur." *Oberti,* 995 F.2d at 1217. Because the School District failed to provide supplementary aids and services in this matter, the negative ef-

fect of Billy's behavior on the other nondisabled students cannot be assessed.

Finally, the School District imposed numerous suspensions for his disruptive behaviors without developing individualized behavior management programs for Billy in violation of 22 Pa.Code § 14.36(c), which provides:

> Positive rather than negative measures shall form the basis of behavior management programs. The type of intervention chosen for a particular student or young child shall be the least intrusive necessary.... Aversive techniques, restraints or discipline procedures may not be used as a substitute for a behavior management program.

Hence, the School District failed to meet the first part of the *Oberti* test for determining compliance with the mainstreaming requirement, and it was not necessary for the Appeals Panel to consider whether the School District met the second part of the test, i.e., whether Billy was included in school programs with nondisabled children to the maximum extent appropriate. Because the hearing officer failed to correctly apply the applicable test to the facts in this matter, the Appeals Panel properly reversed the hearing officer's decision.

 Where, as here, the School District has denied a disabled student a free appropriate public education guaranteed by the Act by failing to comply with the mainstreaming requirement, the appropriate remedy is an award of compensatory education to cure the deprivation of the student's right. *Big Beaver Falls Area School District v. Jackson,* 155 Pa.Cmwlth. 219, 624 A.2d 806 (1993), *appeal denied,* 535 Pa. 676, 636 A.2d 635 (1993); *M.C. on Behalf of J.C. v. Central Regional School District,* 81 F.3d 389 (3rd Cir.1996), *cert. denied,* —— U.S. ——, 117 S.Ct. 176, 136 L.Ed.2d 116 (1996).

Thus, in *Big Beaver Falls Area School District v. Jackson,* 150 Pa.Cmwlth. 268, 615 A.2d 910 (1992), this Court held that the

---

to Billy. However, the Appeals Panel found otherwise. The Appeals Panel specifically stated that the programs referred by the School District as behavior management programs offered at the

Northumberland Center were not individualized for Billy but were universal to all the students. Appeals Panel's Decision, p. 4 n. 36.

award of compensatory education was proper where the school district failed to complete multidisciplinary evaluation and take prompt action in developing an IEP. *See also Lester H. v. Gilhool,* 916 F.2d 865 (3rd Cir.1990), *cert. denied,* 499 U.S. 923, 111 S.Ct. 1317, 113 L.Ed.2d 250 (1991), in which the Court affirmed the award of thirty-month compensatory education for the school district's failure to provide an appropriate educational placement of the disabled student for thirty months.

In this matter, the record established that the School District failed to make reasonable efforts to accommodate Billy in the regular classes in his fifth and sixth grade in violation of the mainstreaming requirement of the Act. Hence, the Appeals Panel's award of the one-year compensatory education must be upheld.

Accordingly, the order of the Appeals Panel is affirmed.

### ORDER

AND NOW, this 4th day of February, 1998, the order of the Pennsylvania Special Education Appeals Panel in the above-captioned matter is affirmed.