**SOUDERTON AREA SCHOOL DISTRICT, Petitioner,**

v.

**ELISABETH S. by and through her legal guardian JANET S., Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Feb. 14, 2003.

Decided April 4, 2003.

Karl A. Romberger, Jr., Lansdale, for petitioner.

Janet S., respondent, pro se.

BEFORE: PELLEGRINI, Judge, COHN, Judge, JIULIANTE, Senior Judge.

OPINION BY Senior Judge JIULIANTE.

The Souderton Area School District (District) appeals from the September 12, 2002 order of the Department of Education's Special Education Due Process Appeals Review Panel (Appeals Panel) that affirmed the Hearing Officer's decision with the modification that Elizabeth S. (Lizzy) be awarded fifty-four hours of compensatory education. We reverse the Appeals Panel's award of compensatory education.

The Appeals Panel noted that Lizzy functions at a borderline level and that she has a full scale I.Q. of 70. As a result, Lizzy is classified as having mental retardation and qualifies as a "child with a disability" for purposes of the Individuals with Disabilities Education Act of 1997 (IDEA), 20 U.S.C. §§ 1400—1487. The Commonwealth is eligible for federal funding under the IDEA if it is able to provide each child between the ages of three and twenty-one with a disability a free appropriate public education (FAPE). In order to do this, an individualized education program (IEP) must be developed which meets that student's particular needs.

The Appeals Panel also noted the following facts. Lizzy was born on December 4, 1988 in South America, where she had suffered from malnutrition. At the age of twenty-one months, Lizzy was adopted by her mother, Janet S. (Parent). Lizzy attended nursery school from ages two-and-a-half to five-and-a-half years. In kindergarten, she was evaluated by the District, which determined that her rates of acquisition and retention were much below her age mates, probably due to her early deprivation.

In first grade, Lizzy began attending learning support classes; upon transferring to a different school, she repeated second grade. During third grade, Parent reported that Lizzy suffered various illnesses and engaged in aberrant behavior, such as pulling out her hair. Parent home-schooled Lizzy during her fourth-grade year, which Parent found to be difficult due to Lizzy's resistance to reading and math instruction.

At the beginning of the 2001–2002 school year, Lizzy transferred to the District's Charter School, where she was in fourth/fifth grade placement. Lizzy remained at the Charter School until January 2, 2002, when she began attending Indian Valley as a sixth-grade student. At this time, Lizzy's November 29, 2001 IEP was in place. Beginning in January and continuing through April 2002, the District held several meetings with Parent in an attempt to develop a new IEP for Lizzy. However, as of the conclusion of an April 30, 2002 meeting, the IEP was not yet finalized.

During the time period of the IEP meetings, Lizzy experienced a head lice problem. On January 18, 2002, the school nurse discovered head lice and sent Lizzy home with instructions to Parent on how to treat the lice. Parent was also advised of the school policy that the students be free of lice/nits. However, from January through March 2002, Lizzy missed a significant amount of school due to the presence of head lice.

Specifically, Lizzy was sent home from school on January 18, 25, February 19, March 20, 21, 2002 (five days). Further, Lizzy was kept in the nurse's office on January 29, 31, February 20 and March 18, 2002 (four days). In addition, between January 22 and March 14, 2002, Lizzy was absent for eleven days. Although Lizzy was absent for one day due to a stomachache, the Appeals Panel determined that Lizzy was absent the other ten days due to the presence of lice/nits.

On March 19, 2002, Parent sent a letter to the principal of Indian Valley requesting an IDEA due process hearing on the following grounds: (1) that the District failed to implement the November 29, 2001 IEP; (2) that Lizzy had been denied entrance to school "on and off" since January 18, 2002; (3) that the District had denied Lizzy FAPE; and (4) that Lizzy had been subject to emotional and academic repression due to denial of FAPE.

The Hearing Officer focused on the following issues: (1) the District's development of a new IEP; (2) the District's implementation of the November 29, 2001 IEP; (3) Lizzy's placement in the sixth

grade; and (4) Lizzy's exclusion due to head lice. Following the hearing, the Hearing Officer determined that: (1) the District took appropriate steps to develop a new IEP; (2) the November 29, 2001 IEP was appropriately implemented; (3) no compensatory education is due as a result of Lizzy's exclusion due to head lice; and (4) the sixth-grade placement was appropriate.

Parent timely filed exceptions to the Hearing Officer's decision and order alleging that the District: (1) improperly placed Lizzy in the sixth grade; (2) failed to involve a regular education teacher in Lizzy's IEP and grade placement processes; (3) failed to review the interim placement within thirty days of January 2, 2002; and (4) improperly excluded Lizzy from school due to head lice.

The Appeals Panel subsequently determined: (1) that the District appropriately placed Lizzy in the sixth grade; (2) that the failure to include one regular teacher on the IEP team was not a fatal flaw that prevented Lizzy from receiving FAPE; (3) that although the IEP process was not completed within thirty days, the District demonstrated good faith in attempting to complete the IEP process; and (4) inasmuch as Lizzy was excluded from school for nineteen days, those days constitute a "removal" for purposes of 34 C.F.R. §§ 300.121(d) and 300.520(a)(1)(ii), which require that compensatory services be provided for any days missed in excess of ten. Thus, the Appeals Panel awarded Lizzy fifty-four hours (nine days of six hours per day) of compensatory education.

■ Consequently, the Appeals Panel affirmed the Hearing Officer's decision and order with the modification that Lizzy be awarded fifty-four hours of compensatory education. The District appealed.[1]

## I.

The District's first argument is that the Appeals Panel erred in concluding that federal disciplinary removal regulations apply to Lizzy's medical exclusions from school because of head lice. The District contends that the Appeals Panel ignored Department of Health regulations, which require that a child afflicted with a head lice infestation be excluded from the other children. See 28 Pa.Code § 27.71(11) (readmission to be determined by school nurse upon reexamination).

A review of the Appeals Panel's decision indicates that it considered the nineteen days Lizzy missed due to head lice to constitute "removal" as contemplated by 34 C.F.R. §§ 300.121(d) and 300.520(a)(1)(ii). Section 300.121(d), relating to Commonwealth's FAPE requirement for each child with disabilities, provides that if a child with disabilities is removed from his or her current placement for more than ten days, the school district must provide services to the extent necessary for the child to appropriately progress in the general curriculum and appropriately advance toward achieving the goals set forth in the child's IEP.[2]

As the District points out, 34 C.F.R. § 300.121(d) is entitled "FAPE for children *suspended or expelled from school.*"

---

1. Our review of a decision of the Appeals Panel is limited to determining whether it is supported by substantial evidence, whether an error of law was committed or whether constitutional rights were violated. *Big Beaver Falls Area Sch. Dist. v. Jackson By and Through Nesmith,* 155 Pa.Cmwlth. 219, 624 A.2d 806 (1993).

2. Section 300.520(a)(1)(ii) provides: "After a child with a disability has been removed from his or her current placement for more than 10 school days in the same school year, during any subsequent days of removal the public agency must provide services to the extent required under § 300.121(d)...." 34 C.F.R. § 300.520(a)(1)(ii).

(Emphasis added). As such, the District asserts that "removed" for purposes of 34 C.F.R. § 300.121(d) means suspended or expelled from school for disciplinary reasons. Therefore, the District maintains that Section 300.121(d) does not apply to Lizzy's exclusion for medical reasons.

■ This Court agrees. In the present case, Lizzy was neither *suspended* nor *expelled* from school for any type of disciplinary reason or misconduct. Furthermore, she was neither *suspended* nor *expelled* due to her illness. Rather, Lizzy was excluded as required by a Department of Health regulation (28 Pa.Code § 27.71) on a day-by-day basis from contact with other school children for a total of nine days because she was afflicted with *pediculosis capitis* (head lice), a communicable disease specifically enumerated in 28 Pa.Code § 27.71(11). The other ten days Lizzy was absent from school were also due to that condition.[3]

Nowhere in 34 C.F.R. § 300.121(d) is there any mention that said provision applies to a child's absence or exclusion from school due to a medical condition. Rather, as noted in its caption, Section 300.121(d) specifically relates to the FAPE requirement for children who have been *suspended* or *expelled* from school. Here, Lizzy was neither suspended nor expelled; rather she was kept in school as much as legally possible and was aggressively treated by the school nurse and others in an effort to improve her condition and return her to class. Consequently, this Court concludes that the Appeals Panel erred in determining that Lizzy was entitled to compensatory education under 34 C.F.R. § 300.121(d) due to her medical exclusions from school based on her head lice problem.

## II.

■ The District further argues that the Appeals Panel erred in determining that Lizzy was denied FAPE based merely on her absences without making a finding that Lizzy had received an inappropriate education. The District asserts that an award of compensatory education requires such a finding.

This Court agrees. In his decision, the Hearing Officer stated:

The teachers who work day-to-day with Lizzy indicate that they are not only implementing the IEP, but that Lizzy is making progress.... *The portrait painted of Lizzy by her teachers of her educational performance was of a student who was doing well in school, was liked by others, and was not easily frustrated or agitated.* They also indicated that she was making progress and that they were implementing the IEP. *This Hearing Officer found the testimony and comments of the teachers who work with Lizzy to be credible.* They provided the day-to-day instruction of Lizzy, interacted with her regularly, and participated in meetings regarding her. The testimony and evidence presented by the teachers was the only information provide [sic] at this Hearing by individuals who worked directly with Lizzy or observed her in the classroom. *Therefore, without any opposing or differing views[,] they are the opinions [on which] we must base the determination of how she was performing.* Additionally, the parent said she liked the teachers.

Hearing Officer's Decision, pp. 15–16 (citations omitted, emphasis added). A review

---

**3.** As the District notes in its brief, the Appeals Panel differentiates between a stomachache and a head lice problem for purposes of determining whether Lizzy was removed from school. Insomuch as both are essentially medical conditions, such a distinction lacks a reasonable basis.

of the record indicates that the Hearing Officer's determinations are supported by substantial evidence.

■ Moreover, the Hearing Officer rejected as not credible the testimony of Parent's advocate, who stated that she believed that the District was not implementing the IEP. The Hearing Officer noted that Parent's advocate admitted that she never observed Lizzy in the classroom. *Id.* As the Appeals Panel noted in its decision, it must defer to the Hearing Officer's credibility determinations unless non-testimonial extrinsic evidence in the record justified a contrary conclusion. *Millersburg Area Sch. Dist. v. Lynda T.*, 707 A.2d 572 (Pa.Cmwlth.1998).

■ Furthermore, nothing in the Appeals Panel's decision contradicted the Hearing Officer's determination that Lizzy was doing well in school. To the contrary, the Appeals Panel determined that the District acted appropriately with regard to implementing Lizzy's IEP and that she was not prevented from receiving FAPE. See Appeals Panel's Opinion at 10. Where a child has been denied FAPE, the remedy is an award of compensatory education to cure the deprivation. *Lynda T.*

In the case *sub judice,* however, both the Hearing Officer and the Appeals Panel determined that Lizzy was not denied FAPE. Those determinations are supported by substantial evidence. As a result, the Appeals Panel erred in awarding Lizzy fifty four hours of compensatory education. *Lynda T.*

### III.

In summary, we conclude that Lizzy's medical exclusions from school due to head lice were not "removals" from school as contemplated by 34 C.F.R. § 300.121(d), which relates to a suspension or expulsion of a disabled child from school for disciplinary reasons. Hence, the Appeals Pan-

el erred in awarding Lizzy compensatory education on the basis of 34 C.F.R. § 300.121(d). In addition, we further conclude that the Appeals Panel erred in awarding Lizzy compensatory education inasmuch as both the Hearing Officer and the Appeals Panel determined that Lizzy was not denied FAPE. *Lynda T.*

Accordingly, we reverse the order of the Appeals Panel to the extent that it awarded Lizzy fifty-four hours of compensatory education. In all other aspects, the order is affirmed.

### ORDER

AND NOW, this 4th day of April, 2003, the September 12, 2002 order of the Special Education Due Process Appeals Review Panel is reversed to the extent that it awarded Respondent Elisabeth S. fifty-four hours of compensatory education. In all other aspects, the order is affirmed.