**SUSQUEHANNA TOWNSHIP SCHOOL DISTRICT,**
Petitioner,

v.

**FRANCES J. and Charles J., parents of Jelani J., and Jelani J.,**
Respondents.

Commonwealth Court of Pennsylvania.

Argued March 31, 2003.

Decided May 7, 2003.

---

Jeffrey F. Champagne, Harrisburg, for petitioner.

Lenora M. Smith, Harrisburg, for respondent.

BEFORE: McGINLEY, Judge, SMITH–RIBNER, Judge, and JIULIANTE, Senior Judge.

OPINION BY Senior Judge JIULIANTE.

The Susquehanna Township School District (District) petitions for review of the

October 25, 2002 order of the Department of Education's (Department) Special Education Appeals Review Panel (Panel) that reversed the Hearing Officer's determination that Jelani J. (Jelani) had graduated from the District. The Panel further ruled that the District remained obligated to provide Jelani, a student with a disability for purposes of the Individuals with Disabilities Education Act of 1997 (IDEA),[1] with a free and appropriate public education (FAPE).

The Panel also ordered the District to reconvene Jelani's individualized education program (IEP) team to develop a post-secondary IEP to be implemented at West Nottingham Academy or at a similar college prep school. The Panel additionally ordered that the District pay the full tuition and fees for Jelani's attendance at either West Nottingham or at a similar school. We affirm as modified.

Jelani, born April 13, 1984, has been identified as a student with dyslexia, memory disorder and attention deficit hyperactive disorder. As such, Jelani qualifies as a student with a disability under the IDEA. On October 23, 2001, the District, Frances and Charles J. (Parents) and Jelani's teachers finalized an IEP for the 2001–2002 school year (2001 IEP).

Pursuant to the 2001 IEP, Jelani attended the Janus School as a twelfth-grader during the 2001–2002 school year at the District's expense. Also included in the IEP was the requirement that Jelani be provided a year of transitional services in the area of post-secondary education in the nature of a college prep program at West Nottingham. This language was handwritten into the IEP by the District Administrator at the October 2001 IEP meeting. See Panel's Opinion at 10.

Nonetheless, on May 16, 2002, the District provided Parents with a Notice of Recommended Placement (NOREP), which reflected that Jelani had completed the 2001 IEP goals and objectives. As a result, the IEP team advised Parents that it was recommending that Jelani graduate on June 5, 2002. Parents objected on the ground that the post-secondary transitional services specified by the IEP team in the 2001 IEP had not been provided.

In response to Parents' objections, Jelani's IEP team reconvened on May 30, 2002 and, without Parents' participation, finalized an IEP for the 2002–2003 school year (2002 IEP). This IEP did not provide for transitional services in the form of a college prep program. Rather, the new IEP specified transitional services in the nature of a special education placement for Jelani and listed his graduation date as 2004. Also on May 30, 2002, the District issued a new NOREP, which noted that Jelani needed additional time with transition services. Parents objected to the proposed 2002 IEP and requested mediation.

By letter dated June 6, 2002, the Janus School advised Parents that although Jelani had met the school's graduation requirements, it would not grant Jelani a diploma at that time due to its understanding that transitional services were in the process of being developed and that graduation might render Jelani ineligible for those services. The letter further indicated that Jelani would be eligible for his diploma upon completion of his transitional services or at Parents' request.

The District rejected Parents' request for mediation and on August 20, 2002, a due process hearing was held. Among other issues raised, Parents claimed that the District never provided the transitional services specified in the 2001 IEP. At the

1. 20 U.S.C. §§ 1400–1487.

hearing, Parents' counsel emphasized that the primary issue before the Hearing Officer was the District's failure to provide transitional services in the academic arena, *i.e.,* a college prep program, despite the 2001 IEP, which indicated that the District would provide those services.

In response, the District claimed that it believed that if Jelani had fulfilled the requirements of graduation, the District owed no further duty. The District requested that the Hearing Officer conclude that the 2002 IEP and NOREP satisfied all legal requirements.

At the beginning of the hearing, the Hearing Officer stated that he would address the issues of (1) whether the District failed to provide transitional services and (2), whether the District had proposed appropriate transitional services in the academic arena. However, in his decision, the Hearing Officer determined that Jelani had graduated and, thus, that the District no longer remained obligated to provide Jelani with FAPE. As a result, the Hearing Officer ruled that the issue of whether the 2002 IEP was appropriate was therefore moot. Hence, he dismissed the case on that ground.

■ Parents filed exceptions to the Hearing Officer's decision and the Panel conducted a *de novo* review of the record. On October 25, 2002, the Panel reversed the Hearing Officer's decision and determined that Jelani had not received the transitional services specified in the 2001 IEP. Consequently, the Panel determined that the District remained obligated to provide Jelani with FAPE and directed that the IEP team be reconvened. The Panel also awarded Jelani compensatory education in the nature of tuition and fees for the college prep program at West Nottingham, which is located in Maryland. The Panel, however, did not award Jelani room, board or transportation costs. The District's appeal to this Court followed.[2]

## I.

■ The District's first argument is that the Panel erred in awarding compensatory education on the basis of an issue that was not a subject in the hearing. Specifically, the District contends that the issue of whether it failed to implement the transitional services specified in the 2001 IEP was beyond the scope of the hearing as defined by the Hearing Officer.

Although the District acknowledges that Parents raised this issue, the District nevertheless maintains that the Hearing Officer did not err in ruling that the issue of whether the content or implementation of the 2001 IEP gives rise to a compensatory education award was not a proper subject for that hearing. Instead, the District maintains that the Hearing Officer properly limited the hearing to the prospective issue of whether the 2002 IEP was appropriate.

Moreover, the District asserts that inasmuch as the issue of the District's compliance with the terms of the 2001 IEP was ruled not to be a subject of the hearing, it did not introduce any evidence concerning this issue. As such, the District contends that in the absence of a factual record, the Panel should not have decided the issue of whether the 2001 IEP was properly implemented. In support of its position, the District cites *Mifflin County Sch. Dist. v. Special Educ. Due Process Appeals Board,* 800 A.2d 1010 (Pa.Cmwlth.2002), where

---

**2.** Our review of a decision of the Panel is limited to determining whether it is supported by substantial evidence, whether an error of law was committed or whether constitutional rights were violated. *Big Beaver Falls Area Sch. Dist. v. Jackson By and Through Nesmith,* 155 Pa.Cmwlth. 219, 624 A.2d 806 (1993).

this Court recognized that the Panel cannot raise and decide issues *sua sponte* without a factual record to support its determination.

In response to the District's position, Parents contend that the issue of whether the District provided the transitional services described in the 2001 IEP was an essential issue that needed to be addressed by the Hearing Officer before he could properly determine if Jelani had "legally" graduated, which thereby would have terminated the District's obligation to provide FAPE. We agree.

Jelani's 2001 IEP included as a "desired post-school outcome" transitional services described as post-secondary education or training to be provided by means of a post-high school year in West Nottingham's college prep program. *See* 2001 IEP; R.R. 94a. This was handwritten in by the District Administrator at the October 2001 IEP meeting.

As discussed above, these services were never provided. The District nevertheless scheduled Jelani for graduation in June 2002. After Parents objected to Jelani's scheduled graduation, the IEP team developed a 2002 IEP, which did not provide for a post-high school year at West Nottingham, but rather changed the transitional services from academic prep to learning support special education services. The change of transitional services was done without consulting Parents or obtaining their consent.

Consequently, although the District attempted to limit the issue of the hearing to the appropriateness of the 2002 IEP, the District was fully aware at the time of the hearing that Parents had disapproved of the 2002 IEP *on the basis that it no longer contained the transitional services set forth in the 2001 IEP*. We also note that the 2001 IEP was introduced into evidence before the Hearing Officer as Ex. SD-4.

Moreover, Pauline Zozos, who describes her position as a facilitator for the District's Special Education Department, testified that, in her opinion, Jelani's 2001 IEP had been implemented and that no one indicated to her that the IEP had not been completed. N.T. 67; R.R. 18a. In addition, the District's counsel stated in his closing statement before the Hearing Officer that "[a]s we laid out in our opening, we believe that Jelani has achieved the requirements of Janus School and [the District] and *of his IEP*." *Id.* at 127; R.R. 33a (emphasis added). Counsel further stated that "the references to West Nottingham in the IEP are not references or commitments to outyear placements to future special ed placements in a thirteenth year program." *Id.* at 128; R.R. 33a.

We also note that at the beginning of the hearing, the Hearing Officer stated: "The statement by [Parents' counsel] that the district has failed to provide transition services ... that's what I'm considering." *Id.* at 34–35; R.R. 10a. Clearly, the issue of whether the District complied with its obligations under the 2001 IEP to provide transitional services in the nature of a college prep program was inextricably intertwined with the issue of whether the 2002 IEP was appropriate.

Nonetheless, as discussed above, the Hearing Officer did not address the issue raised by Parents' Counsel concerning the District's failure to provide transition services, but rather merely determined that "[b]ecause Jelani completed all of the requirements to graduate from high school in June 2002, the District is not required to continue to provide Jelani with a FAPE. Because of that, the issue of whether or not an IEP proposed for the 2002–2003 school year is appropriate is now moot." Hearing Officer's Decision at 4.

Although the Hearing Officer did not expressly determine whether the District provided the transitional services specified in the 2001 IEP, we believe that a proper resolution of that issue is essential in determining whether Jelani had "legally" graduated, thereby terminating the District's obligation to provide FAPE under the IDEA. Department regulations pertaining to high school graduation requirements provide in pertinent part that "[c]hildren with disabilities who satisfactorily complete a special education program developed by an Individualized Education Program team under the [IDEA] and this part shall be granted and issued a regular high school diploma by the school district of residence...." 22 Pa.Code § 4.24(e).

In view of the foregoing, we conclude that the Hearing Officer's failure to address the issue of whether the District provided the transitional services specified in the 2001 IEP did not preclude the Panel from deciding that issue in the context of determining whether the Hearing Officer properly determined that Jelani had graduated and, therefore, that the District no longer had an obligation to provide Jelani with FAPE. In *Millersburg Sch. Dist. v. Lynda T.*, 707 A.2d 572 (Pa.Cmwlth.1998), we recognized that the Panel is the ultimate fact finder and is charged with making an independent examination of the evidence. As such, the Panel "is not bound by the decision of the hearing officer, and its scope of review is not restricted to determining whether the hearing officer's factual findings are supported by substantial evidence." *Id.* at 576. Consequently, we do not believe that the Panel exceeded its authority by addressing the issue of whether the District fulfilled its obligations under the 2001 IEP.

## II.

The District's second argument is that the Panel erred in concluding that the Hearing Officer's Finding of Fact No. 9 is unsupported by substantial evidence. In Finding of Fact No 9, the Hearing Officer stated: "In June 2002 Jelani completed all requirements for high school graduation." Hearing Officer's Decision at 2 (citations omitted).

In response, Parents point out that in *Carlisle Area Sch. Dist. v. Scott P., by and through his guardians, Bess P. and Richard E.P.*, 62 F.3d 520, 528 (3rd Cir.1995), the United States Third Circuit Court of Appeals recognized that the Hearing Officer's "credibility-based findings deserve deference unless non-testimonial, extrinsic evidence in the record would justify a contrary conclusion or unless the record read in its entirety would compel a contrary conclusion." In *Lynda T.*, this Court, citing *Scott P.*, acknowledged that the Panel may reach a conclusion contrary to that of the Hearing Officer if the record, viewed in its entirety, warranted such a conclusion. In *Scott P.*, the Court noted that it is reviewing the agency's decision, not that of the hearing officer.

█ In the case *sub judice*, Parents contend that the record, viewed in its entirety, supports a conclusion contrary to that of the Hearing Officer. Specifically, Parents assert that the Panel did not err in ruling that the Hearing Officer improperly found that Jelani had graduated without determining whether Jelani's 2001 IEP was fully implemented. We agree.

Pursuant to 22 Pa.Code § 4.24(e), in order to graduate, a child with a disability must satisfactorily complete a program developed by an IEP team under the IDEA. Therefore, this Court believes that in order for Jelani to graduate, there must be a determination that the 2001 IEP was fully implemented, including the implementation of the planned transitional services. This determination must be in addition to

whether Jelani had obtained the necessary credits for graduation.

As noted above, Zozos testified that although Jelani had satisfied the standard graduation requirements, she did not have the sense that he had developed the confidence and assuredness that most students develop in high school. N.T. 61; R.R. 16a. In particular, Zozos stated that in her view, Jelani's development of that sense of confidence or assuredness was the "thrust" or "the intent and the purpose" of the proposed 2002 IEP. *Id.* Zozos further stated that the proposed 2002 IEP, which was processed on May 30, 2002, envisioned that this process would encompass two years. *Id.*

In view of the foregoing, we do not believe that the Panel erred in determining that the record, when viewed in its entirety, compels a conclusion that the Hearing Officer erred in finding that Jelani met the requirements for graduation in 22 Pa.Code § 4.24(e) without making a finding as to whether the 2001 IEP had been fully implemented. Such a conclusion is within the province of the Panel. *Scott P.; Lynda T.*

### III.

■ The District's third argument is that the Panel relied on the following facts and assumptions not supported by the record: (1) that the District *unilaterally* graduated Jelani; (2) that Parents requested compensatory education; (3) that Jelani was enrolled in a post-secondary program at West Nottingham; and (4) that the District did not assist Jelani in applying to post-secondary programs.

First, as discussed above, this Court has determined that the Panel did not err or abuse its discretion in determining that the record, viewed in its entirety, compels a conclusion that the Hearing Officer erred in determining that Jelani met the require-

ments for graduation as specified by the Department in 22 Pa.Code § 4.24(e). Second, it is clear from the record that Parents' primary objective in the underlying proceedings was to compel the District to implement the transitional services specified in the 2001 IEP, *i.e.,* Jelani's enrollment in the college prep program at West Nottingham or a similar school.

Third, at oral argument, Parents' counsel informed this Court that Jelani is currently enrolled at West Nottingham. This was not disputed by the District's counsel. Fourth, in view of the fact that Jelani's transitional services were altered by the proposed 2002 IEP from participation in a college prep program at West Nottingham or a similar school to further special education placement, we believe that there is support in the record for the Panel's finding that the District did not meet its 2001 IEP obligations of providing the assistance necessary to provide Jelani with an opportunity to attend West Nottingham prior to being directed to do so by the Panel's October 25, 2002 order, which was not issued until after the 2002–2003 school year had begun.

As such, we reject the District's contention that the Panel made any essential findings of fact that are unsupported by the record.

### IV.

■ The District's fourth argument is that the Panel erred in the calculation and design of its award. Specifically, the District contends that even assuming that an award of compensatory education was a proper remedy in this case, the Panel's award was excessive inasmuch as (1) the District was only obligated under the 2001 IEP to provide the opportunity for Jelani to make contact with, understand and apply to West Nottingham and (2), the award

requires that the District pay Jelani's full tuition and fees at West Nottingham for an indefinite period of time.

Rather, the District asserts that it was only obligated to provide Jelani with the opportunity and skills necessary to apply to West Nottingham, not to pay the tuition and fees at that school for an indefinite period of time. The District further asserts that the Panel's award of compensatory education must be carefully calculated in terms of days and hours. In support of its position, the District cites the Panel's decision in *In Re the Educ. Assignment of Andrew O., a Student in the Forest Area Sch. Dist.*, Sp. Ed. Op. No. 1227 (filed April 9, 2002),[3] where the Panel recognized that the costs incurred in compensatory education should not exceed the full costs of the services that were denied.

However, this Court notes that in *M.C., ex rel. J.C. v. Cent. Reg'l Sch. Dist.*, 81 F.3d 389 (3d Cir.1996), the Third Circuit stated that the IDEA is not satisfied by affording the student a *de minimis* benefit which is trivial or insufficient. In that case, the Court also noted that tuition reimbursement may be awarded as a "vehicle for satisfying both IDEA's pronouncement that children are entitled to a free appropriate education and the congressional intent to provide relief for the deprivation of this right." *Id.* at 395.

With regard to specifics of its award of compensatory education in the present case, the Panel stated the following:

> Parents have asked, albeit indirectly, but nonetheless clearly, that the compensatory education be the transition college prep program anticipated by the IEP team in October 2001. In fact, the team agreed, by listing it on the 2001–02 IEP, that this West Nottingham "compensatory education" was an appropriate

post-school goal for Jelani, and had he applied, he may be enrolled there this fall term in any event. The District shall now provide Jelani with compensatory education as a result of not providing the transition services previously due, by paying tuition and fees for Jelani to attend West Nottingham..... The District failed to develop and provide an integrated transition program for Jelani, and Jelani's attendance at West Nottingham, or a similar program as desired by [Parents], will compensate him for that. *Since the 2002–03 school year has already begun, and transition services by their very nature are dependent upon consistency, this award is for the full " 'transition college prep program' as determined by West Nottingham....'"*

Panel's Opinion at 12 (emphasis added, footnote deleted).

We recognize that the Panel noted in its decision that "it is clear from the record that only application to, *and not actual placement in*, the facility is what was anticipated by the District in 2001...." Panel's Opinion, fn. 5 (emphasis added). Nevertheless, the Panel reasoned that the proper remedy for the District's failure to provide that service was to compensate Jelani for the educational benefit he would have received if the District had implemented the 2001 IEP. In *Lynda T.*, this Court noted that disabled students have a right under the IDEA to FAPE and that compensatory education is a proper remedy to cure the deprivation of that right.

Not only do we agree with the Panel that Jelani's attendance at West Nottingham is a proper remedy for the District's failure to provide the transitional services specified in the IEP, but we also believe that a proper interpretation of the 2001 IEP indicates that the District intended

---

3. This decision is attached to the District's Brief as Ex. D.

that Jelani receive the educational benefit he would derive from a post-high school year in the college prep program at West Nottingham. Having been deprived of such an opportunity by the District, Jelani has a statutory right to receive that educational benefit by means of compensatory education. *Lynda T.* In addition, as the Third Circuit stated in *M.C.*, compensatory education merely requires school districts to belatedly pay expenses for an educational benefit that they should have already provided and that a child's entitlement to FAPE should not turn upon the parents' ability to pay for it.

Moreover, in order to reduce costs to the District, the Panel did not include the costs for room, board and transportation in its award. The Panel denied these costs on the basis that "as compensatory education the parent is limited to approximate financial equivalence to what was denied...." *Id.* As indicated by its decision, the Panel attempted to limit its compensatory award to the approximate financial equivalent of the educational benefit that Jelani was denied as a result of the District's failure to implement the 2001 IEP. Therefore, we reject the District's contention that the Panel's award was not reasonably calculated with regard to the services that were denied.

Nevertheless, this Court does agree with the District's contention that the Panel's award was improper insomuch as it requires that the District pay for Jelani's full tuition and fees at West Nottingham or a at similar program for an indefinite period of time. As such, we believe that the Panel's award must be modified.

In particular, we agree with the District that an "indefinite" or "open-ended" award

of compensatory education fails to meet the requirements of the IDEA. As discussed above, an award of compensatory education is designed to cure the deprivation of the student's right to FAPE. *Lynda T.* Thus, an award which exceeds what is required for compliance with the student's IEP is excessive.

In the present case, the District's obligation as set forth in the 2001 IEP was to provide Jelani with transitional services in the nature of post-secondary education to be provided by means of post-high school year at West Nottingham or at a similar college prep program. Hence, the proper remedy for that violation should not exceed one-year either at West Nottingham or at a similar program. *Id.* As a result, the Panel's order is modified to limit the District's obligation to pay for Jelani's tuition and fees at West Nottingham to a period of one full school year.[4]

## V.

The District's final argument is that the Panel's order is not supported by the alternative theory that the District did not offer an appropriate IEP for the 2002–2003 school year. The District maintains that inasmuch as the Panel's award was based on the District's flawed implementation of the 2001 IEP, the Panel never addressed the sufficiency of the 2002 IEP. The District apparently argues that because the Hearing Officer limited the scope of the hearing to reviewing the 2002 IEP, the Panel's failure to address that issue deprives this Court of the required alternative grounds needed to uphold the Panel's award.

However, as discussed above, this Court has determined that the Panel did not

4. As noted above, Parent's counsel informed this Court at oral argument that Jelani is currently attending West Nottingham. However, we are unaware of the date Jelani began attending West Nottingham. In order for Je-

lani to receive the full benefit of the Panel's award, the District is responsible for Jelani's tuition and fees for the equivalent of one full school year.

exceed its authority in issuing its order. Consequently, no alternative ground for upholding the Panel's order is necessary.

## VI.

Based on the foregoing reasons, we conclude that the Panel's October 25, 2002 opinion and order as modified by this Court is supported by substantial evidence and is in accordance with the applicable law. Accordingly, we affirm as modified.

### *ORDER*

AND NOW, this 7th day of May, 2003, the October 25, 2002 order of the Special Education Appeals Review Panel of the Department of Education is hereby MODIFIED to the extent that Petitioner' obligation to pay for Jelani's full tuition and fees at West Nottingham's College Prep Program or at a similar transition college prep program is hereby limited to a period of one full school year. In all other respects, the order of the Panel is AFFIRMED.